Jay A. KAISER, an individual, contempt respondent, and AMCAP/Denver Limited Partnership, a Delaware limited partnership, contempt respondent, Plaintiffs–Appellees and Cross–Appellants,

and

Silver & Deboskey, P.C., contempt respondent, Appellee,

v.

MARKET SQUARE DISCOUNT LIQUORS, INC., a Colorado corporation, contempt petitioner; Donna Levine, an individual, contempt petitioner; and Freid Zarie, an individual, contempt petitioner, Defendants–Appellants and Cross–Appellees.

No. 97CA1820.

Colorado Court of Appeals, Div. II.

April 29, 1999.

Rehearing Denied July 15, 1999.

Certiorari Denied Jan. 24, 2000.

Silver & Deboskey, P.C., Joe L. Silver, Steven W. Kelly, Denver, Colorado, for Plaintiff–Appellees and Cross–Appellants

Kelly/Haglund/Garnsey & Kahn LLC., Edwin S. Kahn, Lori J. Potter, Denver, Colorado, for Appellee

Burns, Figa & Will, P.C., Phillip S. Figa, Alexander R. Rothrock, Audrey A. Baker, Englewood, Colorado, for Defendants–Appellants and Cross–Appellees

Opinion by Judge PLANK.

Defendants, Market Square Discount Liquors, Inc., a Colorado corporation, and Donna Levine and Freid Zarie, individuals associated with that business, (sellers) appeal the amount of damages awarded by the trial court on their counterclaim in a contract dispute. Plaintiffs, Amcap/Denver Limited Partnership, a Delaware limited partnership, and Jay Kaiser, president of Amcap/Denver's general partner, (buyers) cross-appeal the amount of that judgment. Sellers also appeal the trial court's dismissal of a contempt citation against buyers and their attorneys. We reverse and remand with directions.

Buyers leased to sellers space in their Aurora, Colorado, shopping center for the operation of sellers' retail liquor business. Subsequently, buyers desired to relocate or purchase sellers' business to accommodate the expansion request of a supermarket located near the liquor store. Sellers initially declined to relocate or sell the business, but eventually agreed to do so for a price based upon its annual "net operating income." The sale was to include certain personal property and the transfer or assignment of various rights of sellers to buyers.

Before the deal could be closed, a dispute arose between the parties over various matters, which resulted in this lawsuit. In an attempt to settle the suit, buyers and sellers entered into a stipulation for the sale of the business which incorporated their prior agreement with modifications. The stipulation required a higher but fixed purchase price of $285,000, not based upon the business' income, set a closing date, and required sellers to confess judgment for possession of the premises on that date regardless of whether the closing actually occurred.

At the attempted closing on the date set, buyers did not have certified funds or cash to pay a portion of the purchase price to sellers as required by the stipulation, and sellers could not establish that certain conditions had been met. After sellers had signed a relinquishment of the business' liquor license and other documents, buyers objected to continuing the closing. Sellers offered to put funds in escrow to ensure that their obligations would be met, but buyers rejected that offer. Buyers instead proposed to modify the stipulation, most notably by reducing the purchase price, but sellers rejected that proposal. The closing then failed, and buyers refused to return the documents signed by sellers.

Buyers took possession of the premises pursuant to the judgment earlier confessed by sellers and, using sellers' relinquishment obtained at the failed closing, acquired a temporary liquor license through another entity, and eventually a permanent license, for a new retail liquor business located elsewhere in the shopping center.

Two days after the failed closing, sellers sought and were granted a temporary restraining order (TRO) to prevent buyers from demolishing the building on the premises in which the liquor store was located. However, within an hour after the TRO entered, buyers' agents destroyed the building to prepare for the supermarket's expansion. Before trial, the court dismissed a contempt citation against buyers and their attorneys because sellers had not posted the required bond in the amount of $1 prior to the demolition of the building.

Before trial, the court granted a preliminary injunction which, among other provisions, ordered buyers to pay the indebted-

ness of sellers to a bank, secured by their leasehold, as well as sellers' trade payables owing to liquor suppliers and others, totaling approximately $87,000.

After a bench trial, the court ruled that buyers had materially breached the stipulation by failing to have cash or certified funds at closing, while sellers had committed minor breaches. The court awarded sellers $75,000 as the balance of damages for buyers' breach of contract. Sellers thus received approximately $162,000 of the stipulated purchase price of $285,000.

The trial court initially stated that its reduction in the award of damages from the purchase price was justified by the doctrine of mitigation of damages, noting that sellers had failed to meet certain conditions prior to closing and had thus contributed to its failure. Upon reconsideration, noting that mitigation of damages is an affirmative defense that must be properly pled, the trial court modified the judgment to indicate that the reduction in damages was because sellers did not come before the court with "clean hands" and was based upon the "totality of the circumstances." This appeal and cross-appeal followed.

## I.

After judgment entered in favor of sellers, they filed a notice of appeal in this court with a contemporaneous motion to determine if the judgment was an appealable final order. A division of this court ruled that it was, and buyers then sought and were granted leave to file an out-of-time cross-appeal by another division of this court, over sellers' objection. Sellers contend that we should dismiss the cross-appeal, but we decline to revisit that determination, and conclude that buyers' cross-appeal was properly filed.

## II.

Sellers contend that the trial court erred by improperly reducing their award of damages. We agree.

## A.

▮ In a breach of contract action, the objective is to place the injured party in the position it would have been in but for the breach. The prevailing party is therefore entitled to recover the amount of damages necessary to accomplish that result. *McDonald's Corp. v. Brentwood Center, Ltd.,* 942 P.2d 1308 (Colo.App.1997).

▮ The amount of damages awarded for a breach of contract cannot be based on speculation or conjecture; all that is required, however, is that the damages be determined with "reasonable certainty." *Tull v. Gundersons, Inc.,* 709 P.2d 940, 943 (Colo. 1985).

▮ Whether a breach of a contract is material, and therefore excuses further performance by the other party, is a question of fact. In deciding whether a breach is material, the trier of fact should consider "[t]he extent to which an injured party will obtain substantial benefit from the contract, as well as the adequacy of compensation in damages." *Converse v. Zinke,* 635 P.2d 882, 887 (Colo.1981).

▮ Whether a written contract is ambiguous and, if not, how the unambiguous contractual language should be construed, are questions of law that we review *de novo.* We are not bound by the trial court's construction of unambiguous contractual language, nor by its finding that a contract is unambiguous. *Dorman v. Petrol Aspen, Inc.,* 914 P.2d 909 (Colo.1996). A contract is ambiguous only if it is fairly susceptible of more than one interpretation. *Fibreglas Fabricators, Inc. v. Kylberg,* 799 P.2d 371 (Colo. 1990).

▮ When construing an unambiguous contract, the court may not rewrite its terms but must instead enforce it as written. *USI Properties East, Inc. v. Simpson,* 938 P.2d 168 (Colo.1997).

Our review of the stipulation reveals no ambiguity, and we therefore agree with the trial court that the stipulation is an unambiguous contract. We must therefore enforce it as written.

Here, the trial court found, with support in the record, that buyers did not have cash or

certified funds at closing as required by the stipulation, which states in pertinent part:

The purchase price payable by [buyers] shall be modified to $285,000, payable in the amount of $175,000 in cash at closing, and by the execution of a purchase money promissory note in the amount of $110,-000. . . .

We agree with the trial court's interpretation of the stipulation, and, thus, conclude that buyers were required to pay to sellers the sum of $175,000 in cash at closing.

■ The trial court found that buyers' inability to tender the purchase price in cash or certified funds at closing was a material breach of the stipulation. Because there is support in the record for this finding, we will not disturb it on appeal. The trial court also implicitly found that sellers' breaches were not material, and that finding also has support in the record and will not be disturbed. *See Converse v. Zinke, supra; Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979).

Furthermore, sellers, by granting possession to buyers in advance, had already substantially performed under the stipulation prior to the closing.

■ Sellers were entitled to the benefit of their bargain and to be placed in the same position they would have been in absent buyers' material breach and their own nonmaterial breaches. Hence, the trial court erred by not awarding damages in accordance with the contract.

■ The trial court's finding of sellers' unclean hands is not sufficient to justify a reduction of damages to be awarded to sellers, nor can the trial court do so on the basis of the "totality of the circumstances." *See USI Properties East, Inc. v. Simpson, supra.*

■ The clean hands doctrine can be used only as a defense to a claim in equity, not to a claim at law such as that presented here. *Golden Press, Inc. v. Rylands,* 124 Colo. 122, 126, 235 P.2d 592 (1951).

Sellers are entitled to have the amount of damages determined with reasonable certainty. *See Tull v. Gundersons, Inc., supra.* Therefore, on remand the trial court must make findings setting forth the basis for its calculation and determine with reasonable certainty the amount of sellers' damages.

**B.**

Buyers nevertheless argue that neither party is entitled to enforce a contract and recover damages when both parties have breached, and that their performance was excused by sellers' failure to meet certain conditions precedent. We disagree.

■ The prior agreement of the parties, incorporated into their later stipulation, established a number of conditions precedent to be fulfilled by buyers and sellers prior to closing. Generally, one party's failure to satisfy such conditions would excuse performance by the other party. However, the failure to satisfy such a condition may, as with any other express contract term, be waived by words or unequivocal acts. Where the relevant facts are undisputed, the determination of whether a party has waived a condition precedent is a question of law that we review *de novo. See Richmond v. Grabowski,* 781 P.2d 192 (Colo.App.1989).

■ Here, the stipulation required sellers substantially to perform their part of the stipulation by confessing judgment for possession of the premises to buyers in advance of closing, and it is beyond dispute that sellers did so. By executing on the resulting writ of restitution, buyers accepted seller's substantial performance, thus waiving the conditions precedent set out in the original agreement. Hence, we agree with the trial court's finding that sellers had committed only minor breaches of the contract, and therefore implicitly that they had not failed to satisfy any condition precedent.

■ In the absence of any unsatisfied condition precedent, performance under a contract is excused only by a material breach by the other party, and the injured party is then entitled to recover damages unless it appears that it was completely incapable of performing its part of the bargain. *Daybreak Construction Specialties, Inc. v. Saghatoleslami,* 712 P.2d 1028 (Colo.App.1985).

Moreover, even if both parties materially breach a contract, rescission is the proper remedy when, as here, there has been part performance. *Tromp v. Martinez,* 719 P.2d 380 (Colo.App.1986).

In order to effect mutual rescission of a contract, both parties must be restored to the *status quo ante:* all payments and things of value must be returned, and all benefits conferred must be adequately compensated. *EarthInfo, Inc. v. Hydrosphere Resource Consultants, Inc.,* 900 P.2d 113 (Colo.1995). Also, a party may not rescind a contract in part and affirm it in part, or rescind a contract but retain some benefit arising from it. *Gerbaz v. Hulsey,* 132 Colo. 359, 288 P.2d 357 (1955).

Here, sellers confessed judgment of possession in advance of closing, thereby granting possession of the premises to buyers on a date certain. Thereafter, in the absence of a material breach by sellers, buyers were required to elect either to rescind the contract, and thus to return possession of the premises to sellers, or to perform the contract as written and then seek compensatory damages. *Cooper v. Peoples Bank & Trust Co.,* 725 P.2d 78 (Colo.App.1986).

Instead, buyers argue in effect that they may affirm a portion of the stipulation and retain possession of the premises, but repudiate the remainder and avoid payment of damages. In short, buyers argue that they are entitled to reap nearly the entire benefit of the bargain without paying any of what they agreed to pay. As made clear in *Gerbaz v. Hulsey, supra,* such is not permitted.

Buyers' acceptance of possession of the premises constitutes a waiver of the conditions precedent set forth in the original agreement, and their refusal to return possession of the premises to sellers constitutes an election on their part to affirm the contract by retaining a benefit conferred thereunder. Consequently, sellers may properly seek compensatory damages for buyers' breach.

## III.

Buyers contend that the trial court erred by not finding a waiver of the requirement to pay with cash or certified funds at closing, by finding that funds in their attorneys' trust account were not cash available at closing, and by awarding sellers damages at all because there was insufficient evidence to support such an award. Sellers contend that the trial court erred by finding that certain items of personal property were to be transferred to buyers pursuant to the stipulation. We reject all of these contentions.

Each of these contentions is, in essence, an assertion that the trial court erred in its findings of fact. However, our review of the record reveals sufficient support for each finding, and thus, we will not overturn them. *See Page v. Clark, supra.*

On remand, the trial court may consider, among other factors, the value of the personal property that it determined should have been transferred to buyers in making its damages calculation.

## IV.

Sellers contend that the trial court erred by dismissing a contempt citation against buyers and their attorneys for violating the TRO. We agree that a remand is required.

The issuance of an injunction, including a TRO, is governed by C.R.C.P. 65, which states in pertinent part:

(c) ... No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

Here, the trial court granted a TRO enjoining buyers from demolishing the building, along with other relief, and set the required bond at $1. Sellers do not dispute that they did not post the bond until approximately one week after the building had been demolished by buyers and others.

Generally, strict compliance with the security provisions of C.R.C.P. 65 is re-

quired for the enforcement of an injunction. *Cross v. Board of Directors,* 39 Colo.App. 569, 570 P.2d 1307 (1977). Also, when a trial court does not make findings or set an appropriate bond based on those findings, the resulting injunction is void and unenforceable. *Renner v. Williams,* 140 Colo. 432, 344 P.2d 966 (1959).

■ However, no Colorado appellate case has addressed the question of whether strict compliance with the requirement to pay a nominal bond is a condition precedent to the validity of an injunction.

As the quoted language above makes clear, the purpose of the security to be given when an injunction is issued is to protect from harm a party that is wrongfully enjoined. C.R.C.P. 65.

■ Here, the trial court made a finding that buyers would not suffer any compensable loss if it were later determined that the TRO was wrongfully issued. There is support in the record for the trial court's findings, and thus, we will not disturb them on appeal. *Page v. Clark, supra.* However, pursuant to *Renner v. Williams, supra,* the trial court is bound to set a bond in some amount or the injunction may be invalid for failure to comply with the requirements of the rule. Accordingly, the trial court set a nominal bond in the amount of $1.

In construing C.R.C.P. 65(c), we may look to precedent interpreting the identically worded F.R.C.P. 65(c) as generally persuasive. *Moore & Co. v. Triangle Construction & Development Co.,* 44 Colo.App. 499, 619 P.2d 80 (1980). While there are few cases directly on point, the federal courts acknowledge the validity and enforceability of an injunction until, and unless, it is vacated or expires by its own terms, and hold that it is not void or invalid for failure to post a bond or for other technical violations. *See, e.g., Aoude v. Mobil Oil Corp.,* 862 F.2d 890 (1st Cir.1988); *Milltex Industries Corp. v. Jacquard Lace Co.,* 153 F.R.D. 44 (S.D.N.Y. 1992), *rev'd on other grounds,* 55 F.3d 34 (2d Cir.1995); *Popular Bank v. Banco Popular,* 180 F.R.D. 461 (S.D.Fla.1998). The federal courts reach this conclusion primarily because a contrary holding "would render the [courts] powerless in innumerable situations where immediate equitable relief is required." *New York State National Organization for Women v. Terry,* 697 F.Supp. 1324, 1335 (S.D.N.Y.1988).

■ We find the reasoning of those federal decisions persuasive. Therefore, we conclude that an injunction, including a TRO, is not void or invalid for failure to post a bond, and unless the court's order provides to the contrary, the injunction remains in effect until it is vacated by subsequent order of the court or it otherwise terminates by its own terms.

Contrary to buyers' argument, this holding is not inconsistent with that of *Cross v. Board of Directors, supra.* In that case, upon the motion of the restrained parties, the trial court "dismissed" a restraining order for failure to post a bond. On appeal, a division of this court ruled that the dismissal was a proper remedy for the failure to post a bond, but did not address the issue of the injunction's enforceability prior to dismissal.

■ Thus, we conclude that the trial court erred by ruling that sellers' failure to post the nominal bond rendered the TRO unenforceable.

Buyers argue that we should nevertheless affirm the dismissal of the contempt citation on other grounds. However, all their arguments are based on questions of fact that have not been ruled upon by the trial court. The trial court is in a superior position to make such findings, and we may not properly make them on appeal. On remand, buyers may argue alternative grounds for dismissal of the contempt citation.

The judgment is reversed, and the cause is remanded for further proceedings in accordance with this opinion.

Judge CRISWELL and Judge KAPELKE concur.