Alan S. MORRIS and Anna C.A. Morris, Plaintiffs–Appellees,

v.

BELFOR USA GROUP, INC., d/b/a Belfor RMCAT, Inc., Defendant–Appellant.

No. 08CA0056.

Colorado Court of Appeals, Div. VII.

Dec. 24, 2008.

 

Garfield & Hecht, P.C., David H. McConaughy, Christopher D. Bryan, Glenwood Springs, Colorado, for Plaintiffs–Appellees.

Fennemore Craig, P.C., Daniel W. Glasser, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge GRAHAM.

Defendant, Belfor USA Group, Inc., appeals the trial court's judgment as to the amount of damages awarded to plaintiffs, Alan S. and Anna C.A. Morris, in this contract dispute. Defendant also appeals the trial court's order awarding attorney fees and costs to plaintiffs. We affirm in part, reverse in part, and remand with directions.

## I. Factual Background

Plaintiffs entered into a contract with defendant to reconstruct their home and restore the personal property from the home, both of which were heavily damaged in an April 2003 fire caused by a leaking propane valve. Defendant specializes in the cleaning and restoration of structures and personal property damaged by catastrophic events.

Defendant first performed emergency repairs to the structure of the home so that work crews could enter the home, evaluate the damage, and begin making repairs. Following emergency repairs, plaintiffs elected to demolish the existing structure and build a new home, using a different contractor. As a result, defendant's work thereafter was confined to inventorying, cleaning, and restoring plaintiffs' damaged personal property.

It is undisputed that plaintiffs' homeowners' insurance policy provided $358,000 in coverage for the contents of the home, as well as $25,000 in additional coverage for business personal property contained within the home. The insurance policy provided (1) full replacement value for items deemed "unsalvageable"; and (2) payment for the costs of inventorying, cleaning, and restoring personal property deemed "salvageable." All payments were subject to the total limits of the policy noted above. It is also undisputed that plaintiffs exhausted the limits of the policy in the insurance company's payments for defendant's restorative work and for replacement of unsalvageable property.

The insurance company made two payments related to defendant's work. In August 2003, the insurer issued a third-party check to plaintiffs in the amount of $17,353.22 for emergency repairs. Plaintiffs promptly deposited the check and paid the full amount to defendant. In March 2004, the insurer issued a second third-party check to plaintiffs in the amount of $66,355.02 for the inventorying, cleaning, and restoring of plaintiffs' personal property. This check was also deposited and paid to defendant.

In September 2004, defendant delivered the personal property to plaintiffs that had been cleaned and restored. Defendant had inventoried and sorted the property as either salvageable or unsalvageable. Plaintiffs contend that defendant's work was negligently performed because it had either erred in assessing whether property could be salvaged, improperly restored property, or failed to return property that was salvageable. Plaintiffs also complain that defendant damaged their home's heating system when the emergency repairs were made.

Evidence adduced at trial indicated that defendant failed to return many of the items that defendant had collected for cleaning and restoration. Many of the items that were returned to plaintiffs had been unsatisfactorily cleaned and restored. Among the items that defendant failed to return to plaintiffs was a soccer ball autographed by the members of a defunct professional soccer team, including internationally renowned soccer star Pelé (Pelé soccer ball). Mrs. Morris testified that the Pelé soccer ball had been given to her by her father and held special sentimental value.

In September 2004, the insurer issued a third-party check to plaintiffs in the amount of $20,113.40 as final payment for work performed by defendant. Dissatisfied with defendant's performance, plaintiffs deposited the check into their personal checking account but refused to tender payment to defendant. Defendant sent a letter to plaintiffs' bank asserting that the previous two checks from the insurer had been improperly negotiated because they had not been endorsed by defendant. Defendant omitted to inform the bank that it had received payment on the first two third-party checks. The bank froze plaintiffs' personal checking account, and plaintiffs filed their complaint in the trial court asserting claims for negligence, breach of contract, spurious lien or tortious interference, and civil theft. Defendant filed a counterclaim seeking the final payment of $20,113.40. The case was tried pursuant to the simplified procedure set forth in C.R.C.P. 16.1.

Following a two-day bench trial in March 2007, the trial court issued findings of fact and entered judgment for plaintiffs only on the breach of contract claim. The trial court found that the value of defendant's performance under the contract was "essentially zero" and awarded $83,708.24 for breach of contract with respect to the cleaning, storage, and restoration of personal property. This amount represented a refund of the payments of $66,355.02 and $17,353.22 that had been made to defendant. The trial court also denied defendant's counterclaim, allowing plaintiffs to retain the final payment from the insurer of $20,113.40. The trial court further awarded $3,000 in damages for the lost Pelé soccer ball.

Finally, the trial court awarded plaintiffs' attorney fees in the amount of $25,645, costs in the amount of $23,050.59, and prejudgment interest in the amount of $25,532.62. Included in the award of costs was $15,791.10 in paralegal charges paid by plaintiffs.

This appeal followed.

## II. Damages

Defendant first contends that the trial court erred in its damages calculations, resulting in a windfall to plaintiffs. We are not persuaded, except as to damages awarded for the Pelé soccer ball.

■■ Appellate courts review de novo a trial court's application of governing legal standards. *Lawry v. Palm*, 192 P.3d 550, 558 (Colo.App.2008); *see also Southern Colo. MRI, Ltd. v. Med–Alliance, Inc.*, 166 F.3d 1094, 1100 (10th Cir.1999) (holding that the methodology a trial court uses in calculating a damage award, such as determining the proper elements of the award or the proper scope of recovery, is a question of law reviewed de novo). However, the fact finder has the sole prerogative to assess the amount of damages and its award will not be set aside unless it is manifestly and clearly erroneous. *Lawry*, 192 P.3d at 561 (citing *Logixx Automation, Inc. v. Lawrence Michels Family Trust*, 56 P.3d 1224, 1227 (Colo.App. 2002)).

■■ The goal of a damage award is to "place the parties in the same financial position they would have occupied had the contract terms been fulfilled." *Colo. Nat'l Bank v. Friedman*, 846 P.2d 159, 174 (Colo.1993) (quoting *Republic Nat'l Life Ins. Co. v. Red Lion Homes, Inc.*, 704 F.2d 484, 488 (10th Cir.1983)). The prevailing party is therefore entitled to recover the amount of damages necessary to accomplish that result. *Kaiser v. Market Square Discount Liquors, Inc.*, 992 P.2d 636, 640 (Colo.App.1999) (citing *McDonald's Corp. v. Brentwood Center, Ltd.*, 942 P.2d 1308 (Colo.App.1997)). The amount of damages awarded for a breach of contract cannot be based on speculation or conjecture. *Id.* However, damages need not be calculated

with absolute precision, but must be determined with reasonable certainty. *Tull v. Gundersons, Inc.,* 709 P.2d 940, 943 (Colo. 1985).

In this case, the damages relating to personal property fell into two basic categories. First, there were items which defendant collected but failed to return. Second, there were items that defendant declared salvageable and accepted for cleaning and restoration that were improperly cleaned and restored. Had these items been declared unsalvageable, the insurer would have reimbursed plaintiffs for their replacement value, up to the limits of the policy.

As a threshold matter, it is undisputed that, subject to the limits of the policy, plaintiffs' homeowners insurance provided replacement value for items deemed unsalvageable, and would cover cleaning, restoration, and storage costs for items deemed salvageable.

■ We disagree with defendant's contention that the trial court erred in accepting plaintiffs' proof of damages in connection with defendant's breach of contract. Defendant first argues that any measure of damages must place plaintiffs in the same financial position they would have occupied in the absence of a breach. According to defendant, because the insurance coverage was capped, plaintiffs suffered no loss that would have been covered. Stated another way, had defendant declared items unsalvageable, there was no remaining insurance coverage to replace those items. Thus, in defendant's view, plaintiffs suffered no loss which could have been compensated. We reject this argument because it fails to account for the trial court's conclusion that defendant conferred no benefit on plaintiffs.

■ At a bench trial, it is the trial court's duty to assess the evidence and determine the credibility of the witnesses. *Campbell v. Summit Plaza Assocs.,* 192 P.3d 465, 469 (Colo.App.2008) (citing *Lacy v. Rotating Prods. Sys., Inc.,* 961 P.2d 1144, 1146 (Colo. App.1998)). The credibility of the witnesses and the inferences and conclusions to be drawn from the evidence are within the province of the trial court, and its findings will not be disturbed on appeal unless they are manifestly erroneous. *Id.* (citing *Deas v. Cronin,* 190 Colo. 177, 179, 544 P.2d 991, 993 (1976)).

Here, the trial court heard testimony from insurance adjusters and the parties. The court found that defendant had failed to account for items, failed to document the process of taking inventory, and failed in its proof of performance. The trial court further characterized defendant's performance as "abysmal," "egregious," and "shoddy." In light of the evidence adduced at trial, the court concluded that the value of defendant's performance was "essentially zero."

Although plaintiffs offered testimony as to the value of their lost and improperly restored property, the trial court's detailed findings and conclusions, with one exception, are not based on this testimony. Instead, the trial court's award of damages was based upon a failure of performance by defendant.

■ Whether a breach of contract is material, and therefore excuses further performance by the other party, is a question of fact. *Kaiser,* 992 P.2d at 640. In deciding whether a breach is material, the trier of fact should consider the "extent to which an injured party will obtain substantial benefit from the contract, as well as the adequacy of compensation in damages." *Id.* (quoting *Converse v. Zinke,* 635 P.2d 882, 887 (Colo. 1981)).

Here, the trial court conducted this analysis. Based upon testimony and documentary evidence, the trial court found that defendant's performance provided no tangible benefit to plaintiffs, and thus found that plaintiffs were entitled to keep all insurance proceeds designated for payment to defendant, as well as a complete refund of all insurance payments made to defendant. These findings of material breach and the resulting refund of contract payments are buttressed by substantial evidence in the record, and we will not disturb them here.

Additionally, valuing each item of lost or improperly restored property individually was unnecessary because of the limits of the insurance policy. In fashioning its damages award, the trial court recognized that plain-

tiffs were "underinsured in terms of full replacement value for their personal property" and therefore limited plaintiffs' recovery to the amount of payments made by the insurer to defendant, plus the $20,113.44 final payment that was the subject of defendant's denied counterclaim. Evidence presented at trial indicated that plaintiffs' actual losses caused by defendant likely exceeded the amount ultimately awarded as damages. The trial court's calculation merely placed plaintiffs in the monetary position they would have been in had they never hired defendant and received the entire disbursement of insurance proceeds themselves. The calculation was not based on speculation or conjecture, and plaintiffs' damages were determined by the trial court with reasonable certainty. Accordingly, we conclude that defendant was not harmed by the trial court's damages analysis insofar as that analysis limited plaintiffs' recovery to the amount of insurance proceeds paid to or designated for payment to defendant.

Nevertheless, we do agree with defendant's argument that the trial court awarded more than the paid insurance proceeds because it added the value of the Pelé soccer ball to the refunded contract payments.

Plaintiffs acknowledge that "the combined payments to [defendant] and the [plaintiffs] exhausted the limits of the contents insurance policy." As discussed above, the trial court utilized the limits of the policy to frame its damages analysis, and fashioned an award that put plaintiffs in the same position as they would have been had they never hired defendant and instead collected the entire insurance proceeds themselves.

■ The trial court departed from this formula in awarding $3,000 for the Pelé soccer ball in addition to the other damages. The trial court found that "the ball's loss should have been easily avoidable and retaining it would not have impacted the limit imposed by the insurance cap." The record does not support this conclusion. The trial court apparently reasoned that if plaintiffs had not given defendant custody of the Pelé soccer ball, they would have retained the soccer ball and collected the full amount of the insurance proceeds. While this may be

correct, the same could be said of any item of personal property that was either lost or improperly restored by defendant. The Pelé soccer ball's special sentimental value is immaterial for purposes of assessing rescission damages.

Because plaintiffs' insurance coverage for personal property had been exhausted, plaintiffs would not have received the additional $3,000 had the contract been performed satisfactorily or had plaintiffs never entered into the contract with defendant. This award was thus a windfall to plaintiffs, placing them in a better position than they otherwise would have been in absent the breach of contract.

We therefore conclude that the trial court erred in awarding $3,000 to plaintiffs for the Pelé soccer ball.

### III. Attorney Fees

Defendant next contends that the trial court erred in awarding attorney fees to plaintiffs based upon a fee-shifting provision in the contract expressly benefitting only defendant. We agree.

■ Colorado follows the American Rule that in the absence of a statute, court rule, or private contractual provision to the contrary, attorney fees are not recoverable by the prevailing party. *In re Estate of Klarner*, 113 P.3d 150, 157 (Colo.2005). Whether a contract provides for an award of attorney fees is a question of interpretation that we review de novo. *Butler v. Lembeck*, 182 P.3d 1185, 1188 (Colo.App.2007) (citing *Cont'l W. Ins. Co. v. Heritage Estates Mut. Hous. Ass'n*, 77 P.3d 911, 913 (Colo.App. 2003)). It is axiomatic that a contract should be interpreted "according to the plain and ordinary meaning of its terms." *Lane v. Urgitus*, 145 P.3d 672, 677 (Colo.2006). Accordingly, fee-shifting provisions in a contract are to be interpreted in a "common sense manner." *Butler*, 182 P.3d at 1189 (citing *Agritrack, Inc. v. DeJohn Housemoving, Inc.*, 25 P.3d 1187, 1192 (Colo.2001)).

The attorney fees provision at issue in this case provides in pertinent part:

> If [defendant] consults with an attorney for collection or otherwise, then in addition to

all sums due hereunder, [plaintiffs agree] to pay all costs incurred by [defendant]; including reasonable attorney's fees.

The trial court, referring to the above quoted language, found:

The contract does contain a provision for attorney's fees, though it attempts do so in a fashion which would serve only the interests of defendant. The Court necessarily interprets that provision to be equally applicable to plaintiffs.

The trial court made no further findings or analysis of the fee-shifting provision.

Plaintiffs argue that defendant failed to raise an objection to the award of attorney fees below and cannot raise this issue for the first time on appeal. However, the trial court's award of attorney fees was made *sua sponte* in its March 12, 2007 order. Counsel were not permitted to brief or argue the attorney fees issue before the trial court issued its order. On April 19, 2007, defendant filed its "Objection to Plaintiffs' Notice for Attorney's Fees and Costs." As defendant correctly noted in its objection, defendant was effectively limited to objecting to the reasonableness of costs rather than to attorney fees because "the Court has already decided that Plaintiffs can recover [attorney fees] ... [a]nd *while [defendant] disagrees with that decision,* the propriety of awarding fees will have to be resolved on appeal" (emphasis added).

We therefore address whether the contractual fee-shifting provision at issue here was a proper basis for the trial court's award of attorney fees. We conclude that it was not.

Contractual fee-shifting provisions are generally valid under Colorado law. *See Butler,* 182 P.3d at 1189. No "formulaic language" is required to constitute a valid fee-shifting provision, so long as the provision "clearly informs the parties that a breach ... may result in an award of attorney fees." *Id.* The fee-shifting provision must "specifically refer" to attorney fees to be valid. *Id.* at 1189–90. Here, the fee-shifting provision referred specifically to attorney fees and put both parties on notice that should defendant institute a collection action against plaintiffs, plaintiffs would reimburse defendant for its attorney fees.

Plaintiffs nevertheless argue that the attorney fees provision must be interpreted to mutually benefit both parties. However, in Colorado a fee-shifting provision need not be mutual to be enforceable. *Id.* at 1190 (citing *Rains v. Found. Health Sys. Life & Health,* 23 P.3d 1249, 1255 (Colo.App. 2001)). Here, the fee-shifting provision is unambiguous and susceptible of only one interpretation; namely, that it is a unilateral provision which benefits defendant alone. We therefore conclude as a matter of law that the fee-shifting provision in the contract was not a mutual provision, and benefitted only defendant in the event defendant brought a collection action against plaintiffs.

Plaintiffs urge that the trial court properly reformed the fee-shifting provision because it is unconscionable and void as against public policy. As noted above, the trial court made no findings concerning unconscionability or public policy, but found only that the fee-shifting provision must "necessarily" be interpreted to benefit plaintiffs as well as defendant. Plaintiffs also never argued to the trial court that the fee-shifting provision was unconscionable or void as against public policy.

Contract reformation is an equitable remedy. *Affordable Country Homes, LLC v. Smith,* 194 P.3d 511, 515 (Colo.App. 2008). A court may reform a contract only if the evidence clearly and unequivocally shows that an instrument does not express the true intent or agreement of the parties. *Poly Trucking, Inc. v. Concentra Health Servs., Inc.,* 93 P.3d 561, 563 (Colo.App.2004). Reformation is permissible when either the parties made a mutual mistake or one party made a unilateral mistake and the other party engaged in fraud or inequitable conduct. *Boyles Bros. Drilling Co. v. Orion Indus., Ltd.,* 761 P.2d 278, 281 (Colo.App.1988).

Here, none of the requirements necessary for reformation was alleged, and therefore the trial court made no findings that would permit reformation. Nothing in the record indicates that the contract was not an arms-length agreement freely entered into by the

parties, and the trial court made no such findings. Likewise, nothing in the record indicates that the fee-shifting provision was included in the contract as a result of mistake or inequitable conduct by defendant, and the trial court made no such findings.

The trial court's unilateral reformation of the fee-shifting provision into a mutual remedy was unsupported factually and legally, and was thus improper as a matter of law. Because no other contractual or statutory basis supported the award of attorney fees to plaintiffs, we conclude that under the American Rule, the trial court erred in awarding those fees.

## IV. Costs

Defendant contends that the trial court erred by characterizing paralegal charges incurred by plaintiffs as costs rather than attorney fees. We agree. Defendant also contends that the trial court made insufficient factual and legal findings in its order to support its award of costs other than paralegal charges, thereby abusing its discretion. We reject this contention.

C.R.C.P. 54(d) provides in pertinent part that "costs shall be allowed as of course to the prevailing party unless the court otherwise directs." The awarding of costs is thus within the discretion of the trial court, and that court's findings as to the reasonableness and amount of costs will not be disturbed on appeal absent an abuse of discretion. *Archer v. Farmer Bros. Co.*, 90 P.3d 228, 230 (Colo.2004). A trial court abuses its discretion when it acts in a manifestly arbitrary, unfair, or unreasonable manner. *Id.*

The awarding of costs is also partially governed by statute. Section 13–16–122, C.R.S.2008, sets forth a list of items awardable as costs. However, the list in section 13–16–122 is illustrative rather than exclusive. *Cherry Creek Sch. Dist. No. 5 v. Voelker*, 859 P.2d 805, 813 (Colo.1993).

### A. Paralegal Charges Under C.R.C.P. 16.1(c)

We agree with defendant's contention that the trial court improperly characterized paralegal charges as costs rather than attorney fees.

We first note that we use the term "paralegal charges" as shorthand for the fees billed for the law office duties of a paralegal assistant. Whether paralegal charges should be treated as costs or attorney fees is consequential because this case was tried pursuant to the simplified procedure set forth in C.R.C.P. 16.1. C.R.C.P. 16.1(c) limits a claimant's recovery to a "maximum of $100,000, including any attorney fees, penalties or punitive damages, but excluding interest and costs." Under the trial court's original award, damages and attorney fees awarded to plaintiffs exceeded $100,000. Thus, the trial court's ruling that paralegal charges should be treated as costs rather than attorney fees allowed plaintiffs to recover $15, 791.10 in paralegal charges that would otherwise have been unrecoverable under the C.R.C.P. 16.1(c) cap.

The proper characterization of paralegal charges is not rendered moot by our conclusions in Section III that the trial court improperly reformed the unilateral fee-shifting provision in the contract and that the American Rule barred an award of attorney fees to plaintiffs. In light of those holdings, if paralegal charges are characterized as costs, they would be awardable to plaintiffs so long as they are reasonable. If paralegal charges are characterized as attorney fees, plaintiffs will be unable to recover the charges because they are not entitled to recover attorney fees. We must therefore determine whether paralegal charges should be considered as costs or part of attorney fees.

We have discovered no published decisions construing the meaning of "attorney fees" and "costs" under C.R.C.P. 16.1(c). However, another division of this court held that paralegal charges are not costs within the meaning of the statute governing cost awards, section 13–16–122. *Songer v. Bowman*, 804 P.2d 261, 265 (Colo.App.1990), *aff'd*, 820 P.2d 1110 (Colo.1991), *and overruled on other grounds by People v. Ramirez*, 155 P.3d 371 (Colo.2007). Also, in the context of a school desegregation suit brought by private plaintiffs, the United States Supreme

Court recognized that paralegal charges may properly be awarded as part of "a reasonable attorney's fee." *Missouri v. Jenkins,* 491 U.S. 274, 285, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989). Likewise, courts in other jurisdictions have held that paralegal charges are properly awarded as part of attorney fees. *See, e.g., Cont'l Townhouses E. Unit One Ass'n v. Brockbank,* 152 Ariz. 537, 733 P.2d 1120, 1128–29 (Ct.App.1986) *(Brockbank )* (holding that paralegal, law clerk, and legal assistant services should not be considered part of "taxable court costs" but rather as component of attorney fees).

Plaintiffs contend that because paralegal charges are billed discretely and are not part of the overhead costs of a law practice, they should be characterized as costs. They also argue that because paralegals are not licensed attorneys, the plain meaning of "attorney fees" as used in C.R.C.P. 16.1(c) forecloses classification of paralegal charges as attorney fees subject to the cap. We are not persuaded by either of these arguments.

Plaintiffs are correct that paralegal charges are not part of the overhead expenses of a law practice. Overhead is defined as "business expenses that cannot be allocated to a particular product or service; fixed or ordinary operating cost." *Black's Law Dictionary* 1136 (8th ed. 2004); *see also Harvey v. Farmers Ins. Exchange,* 983 P.2d 34, 41–42 (Colo.App.1998), *aff'd sub nom. Slack v. Farmers Ins. Exchange,* 5 P.3d 280 (Colo.2000). Items such as electricity, gas, and rent are examples of overhead expenses because they cannot be allocated to any particular client or matter. Thus, overhead expenses are presumed to be included in an attorney's hourly billing rate.

Traditionally, the fees for services of paralegals and other non-attorney assistants were treated as overhead expenses and included in an attorney's hourly billing rate. *See Newport Pac. Capital Co. v. Waste,* 878 P.2d 136, 140 (Colo.App.1994) *(Waste ).* However, with modern billing methods and software, it is possible to allocate and bill paralegal charges to specific clients and matters. *Id.* Both plaintiffs and defendant acknowledge that such separate billing for paralegal charges is common practice today. *See Jenkins,* 491

U.S. at 289, 109 S.Ct. 2463; *see also Waste,* 878 P.2d at 140.

Nonetheless, plaintiffs' argument that paralegal charges are properly characterized as costs simply because they are billed separately from attorney fees is unavailing. Plaintiffs assert that *Waste* and *Brody v. Hellman,* 167 P.3d 192 (Colo.App.2007), have supplanted *Songer* and support the proposition that paralegal charges are properly characterized as costs rather than attorney fees. Plaintiffs read these decisions' characterization of costs too broadly and their characterization of attorney fees too narrowly.

In *Waste,* 878 P.2d at 141, the division upheld the trial court's inclusion of discretely billed secretarial time in an award of attorney fees. The court held that so long as the charges for secretarial services were reasonable, they could be properly awarded as part of attorney fees. *Id.* at 140. *Waste* is inapposite for the proposition that paralegal charges are properly characterized as costs for two reasons. First, secretarial services, not paralegal services, were at issue in *Waste.* Second, despite plaintiffs' contention to the contrary, the division in *Waste* did not characterize the secretarial expenses as costs. *Id.* at 141. Instead, the *Waste* division held that secretarial and other support services discretely billed from the attorney's hourly rate were compensable as part of an award of attorney fees, because it was the attorney's actual billing practice to bill for such services separately. *Id.* Quoting from an Oregon Court of Appeals decision, the division in *Waste* noted that "[i]n setting a reasonable *attorney fee* for the prevailing party, it is appropriate for the court to take into consideration the actual billing practices of the party's attorney." *Id.* (emphasis added) (quoting *Willamette Prod. Credit Ass'n v. Borg–Warner Acceptance Corp.,* 75 Or.App. 154, 706 P.2d 577, 580 (1985)). The *Waste* division's holding that secretarial services were properly included in an award of attorney fees supports a broader reading of the term "attorney fees." 878 P.2d at 141; *see also Brockbank,* 733 P.2d at 1128–29.

In *Brody,* 167 P.3d at 205, the division held that certain expenses are separately compensable from attorney fees if "the particular

costs are the type typically billed by attorneys to paying clients in the marketplace." However, paralegal charges were not at issue in *Brody*. The *Brody* division instead considered the reasonableness of an award of costs for computerized legal research, photocopying, hotels, meals, and travel expenses. *Id.* at 206. Plaintiffs are correct that *Brody* reinforces the principle that such expenses are compensable if separately billed. However, *Brody* does not stand for the proposition that paralegal charges are properly characterized as costs.

We are not persuaded by plaintiffs' assertion that paralegal charges are tantamount to other items typically treated as costs, such as computerized legal research, hotels, meals, and travel expenses. The fact that paralegal charges are billed separately from an attorney's hourly rate is not dispositive in determining how to properly characterize the charges. Paralegals perform substantive legal tasks, albeit tasks that do not require a license to practice law. The United States Supreme Court explained in *Jenkins* that

paralegals are capable of carrying out many tasks, under the supervision of an attorney, that might otherwise be performed by a lawyer and billed at a higher rate. Such work might include, for example, factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence. Much such work lies in a gray area of tasks that might appropriately be performed either by an attorney or a paralegal.

491 U.S. at 288 n. 10, 109 S.Ct. 2463. Also, as the Arizona Court of Appeals observed in *Brockbank*, "an attorney would have performed [the paralegal] services if a legal assistant was not employed instead." 733 P.2d at 1127. Paralegal charges are thus properly viewed as surrogate attorney fees, and the practice of billing paralegal charges separately from an attorney's hourly rate does not transform them into costs.

Plaintiffs argue that the term "attorney fees" as used in C.R.C.P. 16.1(c) encompasses only fees charged for the services of licensed attorneys. Nothing in the text of the rule indicates that attorney fees consist only of the hourly rates billed by licensed attorneys, nor do plaintiffs cite any case law supporting their interpretation. Additionally, the decision in *Waste* reinforces the proposition that the term "attorney fees" should be broadly construed. 878 P.2d at 141; *see also Brockbank*, 733 P.2d at 1128–29.

Plaintiffs also maintain that characterizing paralegal charges as attorney fees would discourage the use of paralegal services in cases litigated under C.R.C.P. 16. 1, thereby undermining the fundamental purpose of C.R.C.P. 16.1 to reduce litigation costs. We note that our holding does not erode the ability of trial courts to award paralegal charges as part of attorney fees. However, plaintiffs are not entitled to an award of attorney fees in this case under the American Rule. Accordingly, we conclude that the trial court abused its discretion by classifying and awarding the paralegal charges as part of plaintiffs' costs.

### B. Other Costs

Defendant next contends that the trial court abused its discretion in awarding other costs to plaintiffs. We are not persuaded.

■■■■ Defendant does not challenge the propriety of any specific element of the costs award, but instead argues that the overall award is factually and legally unsupported. The trial court must include in its order findings of fact and conclusions of law sufficient to enable the appellate court to understand the basis of its order and to determine whether the trial court abused its discretion. *In re Marriage of Goodbinder*, 119 P.3d 584, 586 (Colo.App.2005).

In this case, the basis of the trial court's decision to award costs to plaintiffs is sufficiently clear. Following a hearing, the trial court enumerated specific findings of fact and conclusions of law that, in the judgment of the trial court, merited awarding plaintiffs' costs. The trial court specifically discussed in its order (1) travel and meal expenses of the parties; (2) computerized legal research; and (3) witness fees.

First, the trial court noted that the trial and related proceedings occurred in Jefferson County due to a choice of venue provision in the contract. Neither defendant nor plaintiffs are residents of Jefferson County. The court found that plaintiffs incurred travel and lodging expenses that they would not have incurred "but for this litigation." However, it declined to award the cost of meals because those costs would have been incurred regardless of the litigation.

██ Second, the court found that plaintiffs' computerized research costs were compensable under the standard set forth in *Brody*, 167 P.3d at 206. Under *Brody*, a party seeking to recover computerized legal research costs must show (1) the client was billed for (2) computerized legal research expenses separate from attorney fees; (2) the computerized legal research was necessary for trial preparation; and (3) the requested costs were reasonable. *Id.* The trial court found that plaintiffs "presented testimony, including testimony concerning the billing practices of plaintiffs' two law firms, which has established each part" of the three-part showing required under *Brody*.

Finally, the trial court noted that defendant had withdrawn its objection to the witness fees.

The record fully supports the trial court's exercise of discretion in awarding plaintiffs' costs, other than the paralegal charges, and the court sufficiently articulated its factual findings and conclusions of law in its order awarding these costs. Accordingly, we conclude that this portion of the award of costs was not an abuse of discretion.

### V. Conclusion

Because defendant's appeal is not frivolous or vexatious, we deny plaintiffs' motion for attorney fees and costs on appeal.

The trial court's judgment is affirmed, except that the award of damages for the Pelé soccer ball is reversed. The trial court's order as to attorney fees is reversed. That portion of the trial court's order characterizing paralegal charges as costs is reversed, and the order as to costs is otherwise affirmed. The case is remanded for entry of an amended judgment and order consistent with this opinion.

Judge FURMAN and Judge TERRY concur.