**BLASTRAC, N.A., Plaintiff,**

v.

**CONCRETE SOLUTIONS & SUPPLY, Defendant.**

No. CV 09–04775 RSWL (SSx).

United States District Court, C.D. California.

Jan. 8, 2010.

---

Kevin P. Whiteford, Mark A. Serlin, Mark A. Serlin Law Offices, Sacramento, CA, for Plaintiff.

Howard M. Loeb, Howard M. Loeb P.C., Westlake Village, CA, Steven R. Fox, Steven R. Fox Law Offices, Encino, CA, for Defendant.

## MEMORANDUM AND ORDER DENYING PLAINTIFF'S APPLICATION FOR WRIT OF ATTACHMENT

SUZANNE H. SEGAL, United States Magistrate Judge.

### I. INTRODUCTION

On July 1, 2009, Plaintiff Blastrac, N.A. ("Blastrac") filed a Complaint ("Complaint") for breach of contract against Defendant Concrete Solutions & Supply ("CSS"). On November 4, 2009, CSS filed a First Amended Answer and Counterclaim ("Answer") alleging that Blastrac had breached the parties' contract and asserting affirmative defenses. On November 18, 2009, Blastrac filed an Application for a Right to Attach Order ("Application"); a Memorandum of Points and Authorities ("Blastrac Memo"); and a declaration from Blastrac employee Brian Downey ("Downey Decl."), with exhibits, in support of the Application.[1] On De-

---

1. On November 19, 2009, Blastrac filed an Amendment to its application, which merely changed the time of the hearing on the Application.

cember 1, 2009, CSS filed an Opposition to the Application; a Memorandum of Points and Authorities ("Opposition Memo"); a declaration from CSS President Alton R. Anderson ("Anderson Decl."), with exhibits, in support of the Opposition; and evidentiary objections to the Downey Declaration. On December 8, 2009, Blastrac submitted a Reply, a further declaration, and objections to the Anderson Declaration ("Blastrac Objections"). On December 9, 2009, CSS filed objections to Blastrac's supplemental declaration. A hearing was held on December 15, 2009. For the reasons stated below, Blastrac's Motion is DENIED.

## II. FACTUAL BACKGROUND

### A. *Blastrac's Contentions*

In June 2007, Blastrac entered into a distribution agreement ("Agreement") with CSS under which CSS would purchase for resale certain products manufactured by Blastrac.[2] (*See* Downey Decl. at ¶ 3; *see also id.*, Exh. A at 1). Under the Agreement, CSS became the nonexclusive distributor of Blastrac products within a territory that comprised ten counties in Southern California. (*See id.*, Exh. A at 1, 18). CSS agreed to pay invoices issued by Blastrac within thirty days and to be responsible for late payment charges of 1.5% per month on unpaid balances due for more than thirty days. (*Id.*, Exh. A at 2). Blastrac agreed, among other things, to provide market support and training to CSS. (*Id.*, Exh. A at 2–3, 13).

The Agreement included a provision disclaiming "consequential, incidental, special, punitive or indirect damages." (*Id.*, Exh. A at 4–5). Blastrac also "warrant[ed] its products against defects in material and workmanship under normal and proper use for a period of 1 year from the date of delivery" but limited Blastrac's obligation to replacement or repair and disclaimed Blastrac's liability for "any direct, incidental, or consequential damages." (*Id.*, Exh. A at 14, 15). The warranty policy also disclaimed all other warranties, including the implied warranties of merchantability and fitness for a particular purpose. (*Id.*, Exh. A at 15). The Agreement is to be governed by the laws of the State of Colorado, excluding its choice of law rules. (*Id.*, Exh. A at 5).

Blastrac asserts that, pursuant to the Agreement, it shipped product and extended credit to CSS. (*See* Blastrac Memo at 3; Downey Decl. at ¶ 4). It further alleges that CSS fell behind in its payments and now owes Blastrac the principal amount of $328,304.37. (*See* Blastrac Memo at 3; Downey Decl. at ¶¶ 4–5 & Exh. B).

### B. *CSS's Contentions*

CSS asserts that Blastrac has been in material breach of the Agreement since its inception. (Opposition Memo at 2; Anderson Decl. at ¶ 2). CSS claims that Blastrac failed to properly credit returns and billing errors; delayed reconciling credits; allowed others to sell in CSS's protected territory; failed to provide adequate training; delivered nonconforming, unmerchantable products; failed to correct product defects; enticed CSS to enter into a franchise agreement; violated the implied covenant of good faith and fair dealing; failed to provide sales assistance and marketing support; and failed to provide notice of price increases. (Answer at 10–11; *see also* Anderson Decl. at ¶ 23). CSS

---

**2.** The copy of the Agreement provided to the Court is not fully executed, i.e., it has not been signed by a representative of Blastrac. (*See* Downey Decl., Exh. A at 6). It is therefore impossible to determine from this document the precise date that the parties entered into the Agreement. However, both parties assert that the Agreement was entered into sometime in June 2007. (*See id.* at ¶ 3; Anderson Decl. at ¶ 8).

alleges it has incurred damages from the interest it paid on the financing for the allegedly defective POD machines; loss of use of money used to purchase the machines; replacement costs of the machines; costs of rental of replacement machines; costs of credits Blastrac did not give or delayed giving; and other damages according to proof. (Answer at 11). It claims damages "in the amount of at least $215,469.59," exclusive of interest, costs, and attorney fees. (*Id.* at 12).

CSS also raises the following defenses: estoppel, unclean hands, failure of consideration,[3] breach of conditions precedent, failure to mitigate damages, and violation of California Business and Professions Code section 17200. (Answer at 4). It further asserts that Blastrac's damages are the result of Blastrac's own acts and omissions; that Blastrac's damages are the result of actions and omissions of third parties; and that CSS is entitled to set-offs. (*Id.*).

## III. DISCUSSION

### A. *California Law Applies To Blastrac's Application For Issuance Of A Writ Of Attachment*

Plaintiffs in federal court may invoke whatever remedies are provided under the law of the state in which the federal court is located for "seizing a person or property to secure satisfaction of the potential judgment." Fed.R.Civ.P. 64; *Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 558 (9th Cir.1992) (discussing Rule 64). These remedies may include a writ of attachment. Fed.R.Civ.P. 64.

The effect of Rule 64 is to incorporate state law to determine the availability of prejudgment remedies for the seizure of property to secure satisfaction of a judgment ultimately entered. *Granny Goose*

*Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Co.*, 415 U.S. 423, 436 n. 10, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974). Thus, California law provides the rules governing Blastrac's application. In California, the procedures and grounds for obtaining orders for prejudgment writs of attachment are governed by California Code of Civil Procedure sections 481.010–493.060.

### B. *Blastrac Is Not Entitled To An Order For Issuance Of Writ Of Attachment*

#### 1. California Law Governing Attachment

 Attachment "is a remedy by which a plaintiff with a contractual claim to money (not a claim to a specific item of property) may have various items of a defendant's property seized before judgment and held by a levying officer for execution after judgment." *Waffer Int'l Corp. v. Khorsandi*, 69 Cal.App.4th 1261, 1271, 82 Cal.Rptr.2d 241 (1999) (emphasis omitted). California allows prejudgment attachments under limited circumstances as "a provisional remedy to aid in the collection of a money demand." *Kemp Bros. Constr. Inc. v. Titan Elec. Corp.*, 146 Cal.App.4th 1474, 1476, 53 Cal.Rptr.3d 673 (2007). It is "a harsh remedy because it causes the defendant to lose control of his property before the plaintiff's claim is adjudicated." *Martin v. Aboyan*, 148 Cal. App.3d 826, 831, 196 Cal.Rptr. 266 (1983). Therefore, the requirements for the issuance of a writ of attachment are strictly construed against the applicant. *Pos–A–Traction, Inc. v. Kelly–Springfield Tire Co.*, 112 F.Supp.2d 1178, 1181 (C.D.Cal. 2000). The burden is on the applicant to establish each element necessary for an attachment order by a preponderance of

---

**3.** This defense is also known as "'failure of performance' to avoid confusion with the absence of consideration." Restatement (Second) of Contracts § 237 cmt. a (1981).

the evidence. *Loeb & Loeb v. Beverly Glen Music, Inc.,* 166 Cal.App.3d 1110, 1116, 212 Cal.Rptr. 830 (1985).

A writ of attachment may be issued "only in an action on a claim or claims for money, each of which is based upon a contract, express or implied, where the total amount of the claim or claims is a fixed or readily ascertainable amount not less than five hundred dollars." Cal.Civ. Proc.Code § 483.010(a). Attachment is permitted on unsecured claims or claims secured by personal property, but not on claims secured by real property. Cal.Civ. Proc.Code § 483.010(b). Attachment lies on any claim against a partnership or corporation or on claims against individuals that arise out of the conduct by the individual of a trade, business, or profession. Cal.Civ.Proc.Code § 483.010(c).

Apart from these requirements, a court must find all of the following before attachment may issue: (1) the claim upon which the attachment is based is one upon which an attachment may be issued; (2) the plaintiff has established the probable validity of the claim upon which the attachment is based; (3) the attachment is not sought for a purpose other than recovery of the claim upon which the attachment is based; and (4) the amount to be secured by the attachment is greater than zero. Cal.Civ. Proc.Code § 484.090(a).

In order to establish the "probable validity" component, the plaintiff must show it is more likely than not that it will obtain a judgment against the defendant. Cal.Civ.Proc.Code § 481.190; *see also Pos–A–Traction,* 112 F.Supp.2d at 1182. "In determining the probable validity of a claim where the defendant makes an appearance, the court must consider the relative merits of the positions of the respective parties and make a determination of the probable outcome of the litigation." *Loeb & Loeb,* 166 Cal.App.3d at 1120, 212 Cal.Rptr. 830. Thus, it is not enough for

the plaintiff to make out a prima facie case for breach of contract; rather, the plaintiff must also show that the defenses raised are "less than fifty percent likely to succeed." *Pet Food Express, Ltd. v. Royal Canin USA Inc.,* 2009 WL 2252108, at *5 (N.D.Cal.2009). If an applicant fails to rebut a factually-supported defense that would defeat its claims, the applicant has not established probable validity. *See Intervest Mortgage Inv. Co. v. Skidmore,* 2008 WL 5385880, at *7 (E.D.Cal. Dec. 19, 2008) ("[Plaintiff] argues that it may not be required to refute [defendant's] defenses, i.e. that probable validity on the prima facie case may be sufficient. The court disagrees. Section 484.090 requires prediction of the probable outcome of the litigation, and the affirmative defenses and counterclaims will potentially influence this outcome."); *Plata v. Darbun Enters., Inc.,* 2009 WL 3153747, at *7 (S.D.Cal. Sept. 23, 2009) (denying right to attach order because an asserted defense prevented the plaintiffs from establishing the probable validity of their claim).

In *Pet Food Express,* the plaintiff sued the defendant for breach of contract when the defendant stopped applying certain invoice deductions and paying a market development allowance to the plaintiff. *See Pet Food Express,* 2009 WL 2252108, at *1–*2. The plaintiff applied for a prejudgment attachment. *Id.* at *2. The defendant filed its answer and a counterclaim that sought, among other things, a declaration that the agreement providing for the invoice deductions and market development allowance was illegal and unenforceable under antitrust and other laws. *See id.* The court denied the application for a writ of attachment, noting that the defendant had raised a defense of illegality and the plaintiff had not made any showing that the defense was unlikely to succeed. *See id.* at *5. The plaintiff had thus failed to show probable validity of its own claim. *See id.*

Similarly, in *Plata*, the plaintiffs brought an action to enforce a foreign money judgment. *See Plata*, 2009 WL 3153747, at *1. They also sought a writ of attachment. *Id.* at *3. The defendants raised as a defense that the judgment imposed a penalty and was therefore unenforceable under California law. *See id.* at *4. The court stated, "Given the lack of information regarding the nature of the [foreign judgment], the [c]ourt cannot determine as a matter of law whether the damages constitute a penalty." *Id.* at *7. The court noted that, in order to secure the writ of attachment, the plaintiffs had to show that "they will most likely prevail on the issue of whether the [j]udgment constitutes an enforceable penalty." *Id.* Because the plaintiffs had "not produced sufficient information about the underlying judgment for the [c]ourt to make this determination," they had failed to establish the probable validity of their claim. *Id.* Thus, the court must evaluate the strength of asserted defenses when determining the probable validity of a claim.

### 2. Blastrac Has Not Established The Probable Validity Of Its Claim

■ The primary issue in dispute is whether Blastrac has established the probable validity of its claim. As Blastrac has not shown that Blastrac's own alleged breaches did not excuse CSS's performance under the Agreement, Blastrac has not demonstrated that it is more likely than not that Blastrac will obtain a judgment against CSS.

■ Under Colorado law, a material breach of an agreement by one party excuses further performance by the other party.[4] *See Morris v. Belfor USA Group, Inc.*, 201 P.3d 1253, 1258 (Colo.Ct.App. 2008). The materiality of the breach is a question of fact and is determined by "consider[ing] the extent to which an injured party will obtain substantial benefit from the contract, as well as the adequacy of compensation in damages." *Id.* (internal quotation marks omitted).

CSS identifies several ways that Blastrac allegedly failed to meet its obligations under the Agreement, among them:

(1) Blastrac delivered defective POD machines. (*See* Opposition Memo at 2; Anderson Decl. at ¶¶ 2, 23);

(2) Blastrac failed to timely and properly credit CSS for returns and billing errors. (*See* Anderson Decl. at ¶ 23);

(3) Blastrac failed to provide adequate training as required by the Agreement. (*See* Anderson Decl. at ¶ 23).

These breaches, CSS argues, "preclude[ ] Blastrac from any recovery in this action." (Opposition Memo at 2).

CSS has supported this defense with a declaration and documentary evidence.[5]

---

4. Although California law governs the standards by which a writ of attachment can issue, Colorado law governs the interpretation of the Agreement pursuant to the Agreement's choice of law provision. (*See* Downey Decl., Exh. A at 5).

5. Blastrac raises a number of evidentiary objections to the Anderson Declaration and the supporting documents. As relevant to this Order, Blastrac objects to paragraph 2 of the Anderson Declaration as consisting of opinion, conclusory statements, and statements of ultimate facts; and paragraph 23 as being conclusory and stating ultimate facts. (Blastrac Objections at ¶¶ A, N). These objections are OVERRULED. Blastrac's objection to the foundation of the attached documentary evidence (*see* Blastrac Objections at ¶ N) is also OVERRULED. The Anderson Declaration asserts that, as President of CSS, Alton R. Anderson has personal knowledge of the facts asserted, oversees all of the company's operations on a daily basis, and is familiar with all of the dealings between the companies. (Anderson Decl. at ¶ 1). Therefore, a proper foundation has been laid for the documents.

In support of its claim that Blastrac delivered nonconforming goods, CSS has provided documents cataloguing the status of the POD machines purchased from Blastrac and resold (*see, e.g.,* Anderson Decl., Exh. 1 at 198–200; 203–05); invoices from Blastrac for repairs on POD machines (*see, e.g., id.,* Exh. 1 at 223); authorizations to return POD machines issued by Blastrac (*see, e.g., id.,* Exh. 1 at 240); and emails from Blastrac employees received by Anderson discussing failed POD machines (*see, e.g., id.,* Exh. 1 at 229–30).

In support of its claim that Blastrac failed to credit CSS for returns and billing errors, CSS provides emails sent and received by Anderson discussing issues with credits from Blastrac to CSS. (*See, e.g., id.,* Exh. 1 at 70–74; 79–84; 88; 154–57). In support of its claim that Blastrac failed to provide training, CSS provides emails sent and received by Anderson indicating that CSS employees had not received training as required by the Agreement. (*See, e.g., id.,* Exh. 1 at 22–25). Thus, the issue of whether CSS's failure to pay was excused by Blastrac's own material breaches involves vigorously disputed facts.

Blastrac does not counter CSS's defense of failure of performance. Rather, Blastrac argues that CSS's counterclaim cannot be used to offset the amount of attachment under California Code of Civil Procedure 483.015 because the counterclaim is not a claim upon which attachment could be issued as required by the statute. (Reply at 2). However, section 483.015 only becomes relevant once the writ applicant has demonstrated its right to an attachment by meeting the requirements of California Code of Civil Procedure section 484.090, including the probable validity of its claim. *See* Cal.Civ.Proc.Code § 484.090(a) (providing that a right to attach order stating the "amount to be secured by the attachment determined in accordance with Section 483.015" shall issue only if the court finds that all of the requirements of the statute have been met); *see also Pos–A–Traction,* 112 F.Supp.2d at 1182–83 (noting that section 483.015 functions "[t]o sustain reduction in a writ amount"). Blastrac's argument that CSS's counterclaim cannot be used to "offset" the amount of a writ of attachment is irrelevant to the Court's determination of the probable validity of Blastrac's claim.

Blastrac further argues that CSS's counterclaim "cannot ... defeat Blastrac's right of attachment" because it is a claim for consequential damages, which are disclaimed under the Agreement. (Reply at 3). Whatever the substantive merits of this position, the potential failure of CSS's counterclaim does not automatically entitle Blastrac to a writ of attachment. Blastrac has not shown probable validity because it has not effectively addressed CSS's failure of performance *defense.* Blastrac has certainly failed to demonstrate that this defense is "less than fifty percent likely to succeed." *Pet Food Express,* 2009 WL 2252108, at *5; *see also Intervest,* 2008 WL 5385880, at *7.

Accordingly, the Court concludes that Blastrac is not entitled to a writ of attachment.

## IV. CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Blastrac's Application for Writ of Attachment is DENIED. The Clerk of the Court shall serve a copy of this Order on counsel for each party.