Argued and submitted December 7, 1984, affirmed September 18, reconsideration denied November 8, 1985, petition for review denied January 14, 1986 (300 Or 477)

# WILLAMETTE PRODUCTION CREDIT ASSOCIATION,
*Respondent,*

*v.*

# BORG-WARNER ACCEPTANCE CORPORATION,
*Appellant.*

## (81-1768; CA A32265)

706 P2d 577

Charles D. Colett, Portland, argued the cause for appellant.

With him on the brief were Gary M. Galton, and Galton, Popick & Scott, Portland.

Michael Duane Brown, Salem, argued the cause for respondent. With him on the brief was Churchill, Leonard, Brown & Donaldson, Salem.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

The issues in this appeal are the amount of attorney fees awarded by the court and the inclusion of certain expenses in the attorney fee calculation.

This case has a somewhat checkered procedural history. It was initiated by complaint filed on October 31, 1981. The amended complaint, filed in August, 1982, sought (1) to foreclose a livestock feed lien pursuant to ORS 87.226 on defendant's cattle in the amount of $11,296.84; (2) damages of $37,656.14, pursuant to ORS 87.332, for wrongful removal of the cattle subject to the lien and (3) damages of $50,057.19 on a claim called "promissory estoppel." In August, 1983, defendant submitted an offer of compromise to allow judgment of $6,489.41, plus interest, costs and attorney fees. The offer was accepted, and the court entered judgment for that amount. Plaintiff filed a cost bill requesting $23,013.23 as attorney fees and $121 as costs. After a hearing on defendant's objections to the cost bill, the court awarded $22,234 attorney fees and $121 costs.

In its summary, defendant argues:

"This case was settled by acceptance of an Offer of Compromise in the amount of $6,489.41 and statutory interest. The only expert testimony presented at Hearing indicated a reasonable attorney fee would be $2,000 to $2,500. Much of Respondent's billing records included unnecessary discovery, deposition, and preparation time. Respondent's billing records also contain time for Motions and documents never filed with the Court. Finally, the fee award included charges for secretarial time, xeroxing, deposition costs, long-distance telephone costs, mileage to the courthouse, and other costs and expenses not within the 'necessary expense' provisions of Oregon law."

Plaintiff responds:

"Defendant contends that this matter was a simple feed lien case that should have been resolved for $2,000-2,500 in attorney fees. Plaintiff wholeheartedly agrees with this premise. However, Defendant caused the attorney fees to be incurred by not treating this case as a simple feed lien case. Rather Defendant contested every imaginable aspect of the litigation from venue, to pleadings, numerous and meritless

affirmative defenses, to document production, and depositions. Defendant never prevailed on any pre-trial motions by Plaintiff or Defendant.

"Beyond the obvious and direct legal proceedings which increased attorney fees, there was also a pattern of conduct of Defendant and their counsel which unreasonably increased Plaintiff's attorney fees. * * *"

At the hearing, plaintiff's lead counsel testified and submitted an affidavit regarding the basis for the attorney fees request and a detailed breakdown of the time spent by various personnel in the law firm. Defendant presented the testimony of an attorney, who gave his opinion as to a reasonable amount for attorney fees based on his review of the court file and plaintiff's counsel's time sheets. The court made no findings and simply awarded the fees and costs without comment.

Defendant advances a variety of arguments, all centered on the assertion that the attorney fee award is excessive. A recurrent theme in its argument is that the recovery of approximately $6,500 does not justify an award in excess of the recovery. In conjunction with that theme, it contends that the time spent by the various attorneys was unreasonable and unnecessary and that the matter could have been concluded with an expenditure of no more than $2,500 for attorney fees.

■ Although the amount of money in issue and the amount of recovery are germane to the reasonableness of an attorney fee, they are not limitations. For example, attorney fees are allowed in unlawful trade practice actions even when the recovery is a minimal amount. ORS 646.638. In a lien foreclosure action, the amount of the debt may be relatively small and, if that amount were a limitation on recoverable attorney fees, a plaintiff might have simply to forego the lien foreclosure as uneconomic. Also, if the amount in controversey or the actual recovery were considered as a limitation on attorney fees, the debtor, by a vigorous or obstreperous defense, could force abandonment of the claim or an attractive settlement simply because it would be uneconomic for the creditor to continue the effort.

■ Although the settlement figure was approximately $6,500, the amount in controversy was at least $50,000, and plaintiff's efforts were directed in some measure to recovering that amount. Defendant argues that the only controversy was

the percentage of the total feed bill for which defendant should be liable. The history of this litigation belies that simplified answer. Because the case was not tried, the validity of the "promissory estoppel" claim is difficult to assess. At this juncture we accept the pleaded allegations as a reasonable basis for plaintiff continuing the litigation, especially in response to defendant's vigorous defense of even the basic lien foreclosure.

Another principal argument defendant makes is that plaintiff's counsel expended many hours in unnecessary activity, including preparation of pleadings that were never filed, and unneeded discovery and assessment of issues that were totally irrelevant to an agricultural lien foreclosure. Plaintiff's counsel submitted an extensive affidavit, including a detailed accounting of all the time spent by the law firm and an explanation of the basis of the charges. We will not detail the specific charges or activities that defendant challenges. Suffice it to say that many of plaintiff's attorney's hours were spent in response to defendant's defensive tactics and minimal cooperation regarding discovery. The trial judge who awarded the fees had presided over the prejudgment matters involved and was well aware of the difficulties plaintiff had faced in the litigation. We accept the trial court's implicit conclusion that defendant's objections to the necessity of the legal work done were not well taken.

Additionally, defendant contends that some of the items in the calculation of attorney fees are not properly includable. Specifically, defendant objects to including charges for secretarial and legal assistant time, photocopying charges, long distance telephone charges and postage. It argues that such items are overhead expenses customarily included in the hourly rate attributable to attorneys in a law firm and that awarding them specifically allows a double recovery for overhead.

Plaintiff's counsel explained that the law firm's accounting and billing system attributes special overhead expenses to individual clients and not to general overhead. The recovery of those expenses is made by direct billing to the client for whom the charges are incurred and not by an addition to the attorney's hourly rate. He explained that the hourly rate of attorneys in the firm is lower than those in

comparable law firms and that, if the clients were not billed the individual charges, the hourly rate of attorneys would have to be increased 15 to 17 percent to cover this type of overhead. General overhead that cannot conveniently be attributed to a particular client is recouped as part of the attorney's hourly rate.

In setting a reasonable attorney fee for the prevailing party, it is appropriate for the court to take into consideration the actual billing practices of the party's attorney. Traditionally, courts simply have determined fees based on the hourly charge for the attorney working on the case with the assumption that the hourly rate was set to recoup overhead and realize a profit. Modern electronic accounting methods allow a more specialized billing for attorney fees. Courts should recognize the reality of modern legal business practices and include expenses specially billed to the client in the attorney fees award when they are properly documented and are reasonable. We conclude that the charges to which defendant objected are proper in addition to the amounts attributable to individual attorneys' hourly charges.

Defendant argues that, under ORCP 54E, plaintiff is not entitled to any attorney fees or costs incurred after the date of the offer. That rule provides that if the offer to allow judgment is *accepted* the resultant judgment shall include costs, disbursements and attorney fees. Only if the offer is rejected and the plaintiff does not obtain a more favorable recovery are the costs, disbursements and attorney fees limited to the period up to the date of the offer. In this case the offer was accepted, and the judgment appropriately included all costs, disbursements and attorney fees before and after the offer was made.

Although at first blush the fees awarded appear high in relation to the amount of the judgment, an assessment of the factors utilized in determining appropriate fees, *see Hess v. Seeger,* 55 Or App 746, 641 P2d 23, *rev den* 293 Or 103 (1982); *Kerr v. Screen Extras Guild, Inc.,* 526 F2d 67 (9th Cir 1975), *cert den* 425 US 951 (1976), lead us to the conclusion that the trial court's award was proper.

Affirmed.