On respondent's petition for attorney fees, request for findings under ORAP 13.10(7), and request for incentive award and supplemental petition for attorney fees filed June 10 and August 5; defendants-appellants' objections to petition for attorney fees and request for incentive award and supplemental petition for attorney fees filed July 21 and August 17; and reply to defendants-appellants' objections to petition for attorney fees and request for incentive award and request for findings under ORAP 13.10(7) filed August 5; opinion filed May 20, 2009 (228 Or App 454, 209 P3d 357); petitions for attorney fees allowed in amount of $595,647 January 27, 2010

## Mark STRAWN,
on his own behalf and as representative of a class of similarly situated persons,
*Plaintiff-Respondent,*

*v.*

## FARMERS INSURANCE COMPANY OF OREGON,
an Oregon stock insurance company;
Mid-Century Insurance Company,
a foreign corporation;
and Truck Insurance Exchange,
a foreign corporation,
*Defendants-Appellants,*

*and*

## FARMERS INSURANCE GROUP INC.,
a foreign corporation,
*Defendant.*

Multnomah County Circuit Court990809080; A131605

226 P3d 86

────────────

Richard S. Yugler and Landye Bennett Blumstein LLP for petition and supplemental petition. With them on the reply was David N. Goulder.

James N. Westwood, P.K. Runkles-Pearson, and Stoel Rives LLP for response.

Before Wollheim, Presiding Judge, and Brewer, Chief Judge,* and Sercombe, Judge.

SERCOMBE, J.

────────────

* Brewer, C. J., *vice* Edmonds, P. J.

## SERCOMBE, J.

In *Strawn v. Farmers Ins. Co.*, 228 Or App 454, 457, 209 P3d 357, *rev allowed*, 347 Or 258 (2009) (*Strawn II*), defendants Farmers Insurance Company of Oregon, Mid-Century Insurance Company, and Truck Insurance Exchange (collectively "Farmers") appealed a class action judgment awarding plaintiffs $898,323.80 in compensatory damages and prejudgment interest, $8 million in punitive damages, and more than $2.6 million in attorney fees, and a supplemental judgment awarding plaintiffs additional attorney fees. On appeal, we vacated both judgments with instructions to grant Farmers' motion for a new trial limited to punitive damages, unless plaintiffs agreed to remittitur of punitive damages to four times their compensatory damages and prejudgment interest. Otherwise, we affirmed. *Id.* at 488. Plaintiffs, who prevailed on appeal, now petition for attorney fees arising from and related to *Strawn II* and request that we make findings pursuant to ORAP 13.10(7) in support of our decision.

For the reasons explained below, we allow plaintiffs' petitions for attorney fees in part and order an attorney fee award of $542,469 for plaintiffs' "fee-shifting" claims under ORS 742.061(1), an attorney fee award of $41,136 for the common fund claims portion of the appeal, and an attorney fee award of $12,042 for plaintiffs' time litigating their initial attorney fee petition.[1] We deny plaintiffs' request for an additional incentive award to class representative Strawn.

Plaintiffs' class action claims arose out of Farmers' claims handling process with respect to the payment of personal injury protection benefits to its insureds. Plaintiffs brought claims for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, and declaratory relief. The first three of those claims were tried to a jury. The jury found in plaintiffs' favor and awarded $1.5 million

---

[1] Plaintiffs distinguish between the two bases for recovering attorney fees in their case: the "fee-shifting" attorney fee award that is based on ORS 742.061 and results in an attorney fee award that is payable by Farmers (*i.e.*, the fee is "shifted" to the opposing party); and, the attorney fee award to be paid from the punitive damages common fund (*i.e.*, where the attorney fees are paid from the recovery obtained by plaintiffs).

in compensatory damages and prejudgment interest and $8 million in punitive damages on the fraud claim. The court granted declaratory relief. After a post-verdict claims administration process, the judgments noted above were entered. *Strawn II*, 228 Or App at 457.

On appeal, Farmers raised eight assignments of error "spanning nearly every stage of the case—from the court's order granting class certification, through trial and post-verdict proceedings, to the award of attorney fees." *Id.* at 461-62. We affirmed in all respects except for the amount of the punitive damages award. We concluded that "a punitive damages award that is four times plaintiffs' actual or potential harm is all that due process will bear." *Id.* at 485. Accordingly, we vacated the judgment for punitive damages with instructions to grant Farmers' motion for a new trial on punitive damages, unless plaintiffs were to agree to remittitur of punitive damages to four times their compensatory damages and prejudgment interest. *Id.*

Thus, plaintiffs successfully defended the parts of the judgments relating to their contractual claims, the fraud claim, and a portion of the punitive damages. As noted above, plaintiffs rely on two different bases for an allowance of attorney fees on appeal, depending on whether the fees were incurred to defend the judgment on the contractual claims or to defend the parts of the judgment that pertained to the fraud claim and the punitive damages award. Plaintiffs rely on ORS 742.061 for a fee-shifting award arising from their contractual claims against Farmers;[2] they rely on the equitable common fund doctrine for an award to compensate class counsel for defending the verdict on their fraud claim and punitive damages recovery on appeal; they

---

[2] ORS 742.061 has been amended since plaintiffs' class action was initiated in 1999; however, because those amendments are not material to plaintiffs' petition for attorney fees, we cite the version of the statute currently in effect.

ORS 742.061(1) provides, in relevant part:

"[I]f settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon."

also depend on the common fund doctrine in support of their request for an incentive award for Strawn, the class representative. Lastly, plaintiffs petition for supplemental attorney fees for the time and effort they have spent seeking their fees on appeal.[3]

■ "[W]hen an attorney fees petition comports with the requirements of ORAP 13.10(5), * * * our inquiry into the request generally will be limited to the objections that are filed by the party opposing the petition." *Kahn v. Canfield*, 330 Or 10, 13-14, 998 P2d 651 (2000); *see also Dockins v. State Farm Ins. Co.*, 330 Or 1, 6, 997 P2d 859 (2000) (*Dockins II*). Here, Farmers objects to both petitions for attorney fees on various grounds. Although Farmers does not object to plaintiffs' entitlement to some award of attorney fees under ORS 742.061(1), it argues that the amount of fees that plaintiffs initially requested is unreasonable. Farmers likewise contends that the amount of fees requested in the supplemental petition is unreasonable. Lastly, Farmers asserts that plaintiffs are not entitled to any award of attorney fees as compensation for work done in defense of the verdict on plaintiffs' fraud claim and the punitive damages recovery or as an incentive award for the class representative.

---

[3] Plaintiffs also rely on *former* ORCP 32 N(1)(d) (2007), *renumbered as* ORCP 32 M(1)(d) (2009), to support appellate attorney fees in the defense of the contractual claims. That rule provides that "[t]he court may order the adverse party to pay to the prevailing class its reasonable attorney fees and litigation expenses if permitted by law in similar cases not involving a class." Plaintiffs similarly rely on *former* ORCP 32 N(1)(c) in support of their fees for defending the verdict on the fraud claim and the punitive damages award. Those rules, however, apply to the circuit courts, and not the appellate courts, of this state. *See* ORCP 1 A.

Under ORS 19.440, we are directed to construe

"[a]ny statute law of this state that authorizes or requires the award or allowance of attorney fees to a party in a civil action or proceeding, but does not expressly authorize or require that award or allowance on an appeal in the action or proceeding and does not expressly prohibit that award or allowance on an appeal, * * * as authorizing or requiring that award or allowance on an appeal in the action or proceeding."

We do not construe *former* ORCP 32 N as a statute that authorizes attorney fees not otherwise provided for by statute or law. Because *former* ORCP 32 N is only a mechanism by which class action attorney fee requests in the circuit courts are regulated, authorization for such a fee request on appeal must be found elsewhere. We therefore do not rely on *former* ORCP 32 N in determining whether to grant plaintiffs' fee petitions.

## I. FEE SHIFTING AWARD

In their initial petition for attorney fees, plaintiffs seek $1,065,560 for their fee shifting claims under ORS 742.061(1), itemized as $969,256.80 in fees and $96,303.38 in costs and expenses. Plaintiffs' itemized fee request results from (1) the determination of the total number hours spent on plaintiffs' appeal and the multiplication of those hours by class counsel's hourly rates, resulting in a "lodestar" amount of fees; (2) the allocation of hours to distinguish time spent on plaintiffs' fee-shifting claims from time spent defending plaintiffs' common-law fraud claim and punitive damages recovery, and a reduction of the lodestar based on that allocation; (3) the application of a fee enhancement or multiplier to that reduced lodestar; and (4) a request for costs and expenses not included in that reduced lodestar. We begin our analysis of plaintiffs' fee-shifting request by noting the standard that applies to such an award. We then address each of the four steps in plaintiffs' calculation method, taking into consideration Farmers' objections.

### A. *Standard*

■ ORS 742.061(1) provides for an award of a "reasonable amount" of attorney fees for work done on appeal in an action "upon any policy of insurance." In determining a reasonable attorney fee award under ORS 742.061, we consider the factors enumerated in ORS 20.075. *See also Dockins II*, 330 Or at 5-6 (citing those same factors as stated in DR 2-106). ORS 20.075 provides:

"(1) A court shall consider the following factors in determining whether to award attorney fees in any case in which an award of attorney fees is authorized by statute and in which the court has discretion to decide whether to award attorney fees:

"(a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.

"(b) The objective reasonableness of the claims and defenses asserted by the parties.

"(c) The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.

"(d) The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.

"(e) The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.

"(f) The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.

"(g) The amount that the court has awarded as a prevailing party fee under ORS 20.190.

"(h) Such other factors as the court may consider appropriate under the circumstances of the case.

"(2) A court shall consider the factors specified in subsection (1) of this section in determining the amount of an award of attorney fees in any case in which an award of attorney fees is authorized or required by statute. In addition, the court shall consider the following factors in determining the amount of an award of attorney fees in those cases:

"(a) The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.

"(b) The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.

"(c) The fee customarily charged in the locality for similar legal services.

"(d) The amount involved in the controversy and the results obtained.

"(e) The time limitations imposed by the client or by the circumstances of the case.

"(f) The nature and length of the attorney's professional relationship with the client.

"(g) The experience, reputation and ability of the attorney performing the services.

"(h) Whether the fee of the attorney is fixed or contingent."

We do not find that the factors set out in ORS 20.075(1) affect the amount of the fee-shifting award. The criteria in ORS 20.075(2), however, are material, and we now turn to the application of those factors.

B. *Reasonableness of Total Hours*

Plaintiffs assert that the time spent by class counsel on plaintiffs' appeal was reasonable, and plaintiffs have submitted declarations by class counsel and an outside expert in support of that assertion. Plaintiffs base their fee-shifting request on 1,537 hours of appellate time and 94.4 hours of class administration time. Included within plaintiffs' 1,537 hours of appellate time are 61.55 hours that arose from and relate to a prior appeal initiated by Farmers that occurred during the course of this litigation. *See Strawn v. Farmers Ins. Co.*, 195 Or App 679, 98 P2d 1158 (2004) (*Strawn I*). The 94.4 hours of class administration time represent time that plaintiffs assert counsel spent working on certain post-judgment proceedings in the trial court, communications with class members after November 23, 2005, and expenses for claims administration after December 9, 2005, necessary to the pendency of the appeal.

Farmers objects to the total number of hours spent by class counsel on appeal as excessive because the appeal involved the preparation of only a single brief and oral argument and class counsel's hours included duplicative work. Farmers argues, based on the submitted declaration of an outside expert, that class counsel's total appellate hours should be reduced to, at most, 700 hours of appellate time. Furthermore, Farmers argues that, in any event, we should refuse plaintiffs' request for fees related to *Strawn I*, where Farmers was designated as the prevailing party and no costs were allowed.

Plaintiffs respond that their overall time is reasonable given (1) the procedural and substantive complexity of the underlying case and the appeal and (2) the approach

undertaken by Farmers on appeal. Plaintiffs note that, on appeal, Farmers had advanced eight assignments of error spanning nearly every stage of the case, it combined assignments of error that should have been separately stated, and it raised issues that it had failed to preserve. *See Strawn II*, 228 Or App at 461-62, 466-69, 473-75. Finally, plaintiffs reassert that time related to *Strawn I* is properly part of their recovery.

We agree with Farmers that the overall amount of time plaintiffs seek for litigating the appeal is excessive. Farmers has made a sufficient showing that the amount of time plaintiffs expended in this case lies outside the reasonable range for an appeal, even for a complex class action of this magnitude. We conclude that some of the time spent on preparation of the appellate brief was excessive and reduce the fees in the amount of $64,500. We also reduce plaintiffs' appellate time to eliminate the 61.55 hours that plaintiffs spent on *Strawn I*. Plaintiffs may only recover the fees incurred in *Strawn II*, where they are the prevailing party and are entitled to costs; they may not now recover the fees incurred in *Strawn I*, where they were not the prevailing party and were not entitled to costs. In addition, we deny plaintiffs' request for fees attributable to the 94.4 hours of class administration time. The class must instead seek a supplemental judgment in the trial court for that time. We calculate the value of plaintiffs' attorney fees on the appeal to be $373,966.

## C. *Allocation of Hours to Fee-Shifting Claims*

Plaintiffs have made an allocation to distinguish the hours that class counsel spent on an action "upon any policy of insurance" under ORS 742.061(1)—*i.e.*, the hours spent on their fee-shifting claims—from the hours incurred solely in connection with their claim for common-law fraud and punitive damages recovery. Plaintiffs contend that roughly 11 percent of their time was spent defending their verdict on the fraud claim and their punitive damages recovery.

Farmers objects to the allocation as made by plaintiffs and argues that 20 percent of plaintiffs' appellate time should be allocated to the non-fee-shifting claims. One of Farmers' experts contends that the allocation made by

plaintiffs was unreasonable, in part, because the work necessary to defend the verdict on the fraud claim and punitive damages recovery was substantial, as demonstrated by the amount of briefing provided on those matters by plaintiffs. Farmers also contends that, in addition to the hours devoted to the fraud claim and punitive damages recovery, the hours that class counsel spent on the assignment of error concerning the mootness of the declaratory judgment claim is also not compensable under ORS 742.061(1). With respect to the declaratory judgment claim, Farmers asserts that (1) the work class counsel "performed on appeal [was] essentially procedural and so far removed from the direct object of obtaining a money judgment," as required under *McGraw v. Gwinner*, 282 Or 393, 578 P2d 1250 (1978), and (2) the work was unique and not duplicative of any work that advanced the actual fee-shifting claims.

In response, plaintiffs contend that Farmers' expert inflated the amount of briefing time required on the fraud claim and punitive damages recovery. In addition, plaintiffs assert that the assignment of error regarding punitive damages was one of the most straightforward assignments to respond to because the principal cases were well known, the factors to be considered were established, and one of plaintiffs' attorneys was active in participating in many recent punitive damages cases in Oregon. Thus, plaintiffs argue that despite the magnitude of the punitive damages recovery, the 11 percent allocation is reasonable. As to Farmers' objection to the inclusion of time spent on the declaratory judgment claim, plaintiffs respond that Farmers made no such argument below and that the trial court's attorney fee award included time spent on the declaratory judgment claim. Plaintiffs also assert that *McGraw* is inapposite.

We agree with plaintiffs that an allocation of 11 percent of plaintiffs' attorneys' time to the fraud claim and punitive damages recovery is reasonable. We also conclude that the declaratory judgment claim was related to the contractual claim and that the attorney time incurred regarding that claim was compensable under ORS 742.061. Our conclusion on the allocation issue results from the broad range of complex legal issues presented in the appeal related to the class action and the contractual claim and the relatively narrow

legal issues presented with respect to the fraud claim and punitive damages recovery. The size of the respective claims does not drive the amount of legal effort necessary for their defense on appeal. Accordingly, we will allocate 11 percent of plaintiffs' appellate time—a value of $41,136—to plaintiffs' non-fee-shifting claims. Thus, plaintiffs are entitled to recover $332,830 in fees under ORS 742.061.

## D. *Fee Enhancement*

Plaintiffs seek a fee enhancement for the services rendered by class counsel on appeal by a factor of 2.25. Plaintiffs argue that a substantial fee enhancement is reasonable given (1) the high risk and contingent nature of the case; (2) the time and effort involved; (3) the novelty and difficulty of the questions involved and the magnitude, complexity, and uniqueness of the litigation; and (4) the results achieved. They note that a factor of 2.25 was used by the trial court to enhance their award of attorney fees for services rendered at trial—an award we affirmed in *Strawn II*.

Farmers objects to the use of a multiplier and argues that, pursuant to ORS 742.061(1), plaintiffs are entitled on appeal only to a "reasonable" fee and not the "astronomical" fees that they have requested. Farmers asserts that Oregon courts have rejected the federal lodestar and multiplier approach requested by plaintiffs. One of Farmers' experts recognizes, however, that Oregon law does support compensating counsel who take on contingent fee cases at rates exceeding their standard billing rates. Farmers' expert nonetheless contends that Oregon courts have not used that proposition as a springboard to apply a "multiplier." Despite that contention, Farmers' expert also notes that in *Strunk v. PERB*, 343 Or 226, 169 P3d 1242 (2007) (*Strunk III*), the court did apply a multiplier to calculate the fee award. Farmers' expert distinguishes *Strunk III* on the ground that that case involved the common fund doctrine and not a fee-shifting statute as the basis for an award of appellate fees. Farmers' expert states that an enhancement of plaintiffs' fees is not appropriate because (1) the need to incentivize plaintiffs' counsel on appeal was less; (2) the complexity of the case was compensated by the staffing choices and hours spent by class counsel on the appeal; and (3) the risk that class counsel

faced on appeal was less than the risk that they faced initially at trial. Farmers suggests that if an enhancement is allowed on the appellate fee award, it should be less than the enhancement allowed on the fees at trial.

In response, plaintiffs assert that the term "reasonable" in ORS 742.061 does not preclude the use of a multiplier or other fee enhancement. They argue that enhanced fees are available, whether reached by application of a lodestar and multiplier approach or through the increase of standard hourly rates to "reasonable rates" based on market rates and an enhancement for contingent risks. They assert that the approval of multipliers in *Strunk III* is not restricted to common fund cases and refer us to the award of fees, which included a multiplier, in *Dockins II*. Further, they argue that enhancement remains appropriate here because the case remained a "no offer" case throughout the pendency of the appeal, and, therefore, the risks remained the same on appeal.

In light of the issues framed by the parties, we first determine whether we are precluded from using a multiplier or other fee enhancement in determining plaintiffs' fee-shifting award for appellate work. If we are not so precluded, we must then determine whether application of a multiplier or enhancement is appropriate in this case. Lastly, if use of a multiplier or enhancement is appropriate, we must determine what that multiplier or enhancement should be. We begin by examining the cases relied on by the parties.

In *Wattenbarger v. Boise Cascade Corp.*, 301 Or 12, 16, 717 P2d 1175 (1986), the claimant argued that the court should recognize that the contingent nature of attorney fees in all workers' compensation claims justified a "multiplier" in representing claimants generally, regardless of the circumstances in an individual case. The court disagreed and held:

> "The statute does not support a general 'multiplier' for the statistical risk, but it does not foreclose a court from allowing a fee exceeding the attorney's usual hourly rate when the court finds that, in the specific case, success is sufficiently in doubt and the risk that the services will go uncompensated is so high that a higher attorney fee is reasonable."

*Id.*

In *Griffin v. Tri-Met*, 112 Or App 575, 584-85, 831 P2d 42 (1992), *rev'd on other grounds*, 318 Or 500, 870 P2d 808 (1994), the trial court had awarded plaintiff attorney fees at twice counsel's standard rate. Tri-Met, the defendant, argued that that award was in error and relied on federal cases where use of a "multiplier" was at issue. On appeal, we stated: "Most of that reported litigation is unhelpful and the formulas used are unduly cumbersome. Instead, we continue to review the reasonableness of attorney fee awards by using the [traditional] factors * * *." We then examined the circumstances of the case: (1) there were a limited number of attorneys willing and able to take on complex, controversial, and high risk employment cases like the one at issue; (2) the evidence showed that the plaintiffs had experienced difficulty in obtaining qualified counsel; and (3) the evidence also showed that counsel who successfully undertook such cases for a contingency fee were generally compensated at rates greatly exceeding standard billing rates for general legal services. Thus, we concluded "that there was substantial evidence supporting the attorney fees award and [held] that, under the circumstances of [the] case, the court did not abuse its discretion in awarding fees at twice counsel's standard rate." *Id.*

In *Dockins II*, the petitioners requested an attorney fee award for appellate work done in *Dockins v. State Farm Ins. Co.*, 329 Or 20, 985 P2d 796 (1999) (*Dockins I*). They explained that request as follows:

> "For each lawyer and legal assistant who worked on petitioners' appeal, petitioners have multiplied the number of hours they billed by a 'reasonable hourly rate,' which is based on the respective lawyer's or assistant's standard rate for the work at issue. When the total fees for each lawyer and legal assistant are added, the result is the amount requested."

330 Or at 4 (footnote omitted). The "reasonable hourly rate" represented the petitioners' attorneys' standard rates multiplied by a factor that they stated represented the increased risk inherent in taking a case on a contingent fee basis. *Id.* at 4 n 3. The use of that factor was not objected to by the respondent, although the respondent did object to the reasonableness of the petitioners' underlying standard rates. *Id.* at 8, 8 n 10. The court was not persuaded by the respondent's

objection and awarded the petitioners the fees as they had been requested. *Id.* at 8-9.

Most recently, in *Strunk v. PERB*, 341 Or 175, 179, 139 P3d 956 (2006) (*Strunk II*), attorneys for public employees who had successfully challenged various statutory enactments revising the terms of the employees' pension plans petitioned the Oregon Supreme Court for attorney fees and costs related to the litigation that had culminated in *Strunk v. PERB*, 338 Or 145, 108 P3d 1058 (2005) (*Strunk I*). *Strunk I* was before the Oregon Supreme Court on six original jurisdiction petitions; it was not a case that had come to the court on appeal. 338 Or at 150. The court in *Strunk II* held that the petitioners' attorneys were entitled to "an award of reasonable fees" under the equitable common fund doctrine and referred the matter to a special master for findings and recommendations with respect to the fees to be awarded. 341 Or at 184-85.

In *Strunk III*, the court reviewed the findings and recommendations of the special master, considered the objections and responses made by the parties, and ultimately determined the "reasonable attorney fees and costs" that should be awarded. 343 Or at 247. One of the issues considered by the court in *Strunk III* was the respondents' assertion that "the special master erred in awarding the fee multipliers requested by petitioners' lawyers in this case." *Id.* at 245. The petitioners' attorneys had requested respective multipliers of 1.5 and 2.0. *Id.* at 233. The respondents argued that, under the common fund doctrine, "such multipliers are generally appropriate only in the face of 'exceptional success.'" *Id.* at 245. They contended that, because the petitioners failed to prevail on all of their claims in *Strunk I*, they had failed to achieve "exceptional success." *Id.*

The court disagreed and recognized that, in common fund cases, the preserved fund itself was a primary measure of success—the preserved fund at issue in the case exceeded $1 billion. In addition, the court noted that other factors—such as the difficulty and complexity in the case, the value of the interests at stake, and the skill and professional standing of the lawyers involved—also supported an enhancement of fees. The court therefore allowed the fee awards to be

enhanced by applying the respective multipliers requested by the petitioners' lawyers. *Id.* at 246.

■■ Based on the above case law, it is apparent that an award of "reasonable" attorney fees does not preclude the use of a multiplier or other fee enhancement for (1) work done at trial (*Griffin*); (2) work done before an appellate court sitting pursuant to its original jurisdiction (*Strunk III*); or (3) work done on appeal (*Dockins II*). Such an enhancement may be applied at the beginning of the calculation process by increasing counsel's standard or basic hourly rate to a "reasonable hourly rate" for the work done given the nature of the case, as occurred in *Dockins II*, or the enhancement may be applied later in the calculation process by increasing a lodestar amount of fees, as occurred in *Strunk III*.

■ Regardless of the arithmetic used, what remains constant are the factors that a court will consider in determining whether a fee enhancement should be applied in calculating a reasonable fee award. Those criteria are set out in ORS 20.075(2). The factors relevant to this case are: (1) the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal service; (2) the amount involved in the controversy and the results obtained; (3) the experience, reputation, and ability of the attorney performing the service; and (4) whether the fee of the attorney is contingent. We construe the last of those circumstances to include consideration of the risks undertaken by the attorney in litigating the case.

■ Several circumstances support an enhanced award for plaintiffs' fee-shifting claims in this case. First, and primarily, because this case remained a "no offer" case throughout the pendency of the appeal—*i.e.*, a case where Farmers did not attempt to settle the dispute and made no tender to the class—class counsel continued to face a very significant risk that they would be left uncompensated given the contingent nature of their right to attorney fees. Second, this case presented novel and difficult questions in the context of a complex and large class action litigation. That factor is of less importance in the enhanced fee analysis because the complexity of the case is already accounted for in the number of hours spent in defending the appeal. Third, class counsel on

appeal preserved in whole plaintiffs' award of compensatory damages and interest. Thus, we hold that plaintiffs are entitled to an enhanced fee award on their fee-shifting claims.

We next determine what that enhanced fee award should be. Plaintiffs have argued that we should apply a multiplier of 2.25 because that multiplier was used to enhance their fees for work done at trial. Farmers, on the other hand, urges us to evaluate the overall reasonableness of the award and asserts that the use of the multiplier requested results in astronomically unreasonable fees.

We do not agree with plaintiffs that a multiplier of 2.25 is appropriate simply because that multiplier was used by the trial court in awarding fees for the work done at trial. Appellate work is not identical to trial work. As the prevailing party at trial and the respondent on appeal, plaintiffs were entitled to certain favorable standards of review. The prosecution of the case at trial was more risky than the defense of the judgments on appeal. In addition, plaintiffs' efforts in arguing from a closed record on appeal cannot be equated with their efforts in creating that record at trial.

In *Strunk III*, the court approved the use of multipliers of 1.5 and 2.0 for work done in the *Strunk I* litigation. 343 Or at 233, 246. As noted above, those enhancements resulted from consideration of the result achieved, the difficulty and complexity of the issues involved, the value of the interests at stake, and the skill and professional standing of the lawyers involved. *Id.* at 246. Because some of those same factors support an enhancement in this case, we conclude that a similar enhancement factor is appropriate. In choosing an enhancement factor, we are sensitive to the declarations of class counsel regarding their standard billing rates as compared to the rates of their peers. Plaintiffs' lead attorney notes that class counsel's standard billing rates in this case are below the rates of many attorneys of similar training, experience, and skill. Specifically, the rates for plaintiffs' attorneys range from $200 to $400 per hour. Plaintiffs' lead attorney notes that standard billing rates of his peers can range from $450 to $590 per hour.

The ORS 20.075(2) factors in this case, however, suggest a lower multiplier than the one allowed in *Strunk III*.

*Strunk III* involved the recovery of a substantially greater sum of money for the plaintiffs, the creation of a new record before the special master, and issues that were somewhat more complex than this case. For those reasons, we hold that an enhancement factor of 1.6 is appropriate for the appellate work done in this case. Thus, plaintiffs' enhanced lodestar amounts to $532,528 in fees.

### E. *Costs and Expenses*

■ Plaintiffs request additional costs and expenses that are not included in their hourly rates. Included in their cost and expense request were unpaid invoices for class action administration services since November 23, 2005, in the amount of $23,526.50, as well as future expenses for class administration services in the amount of $62,836.

In *Willamette Prod. Credit v. Borg-Warner Acceptance*, 75 Or App 154, 159, 706 P2d 577 (1985), *rev den*, 300 Or 477 (1986), we stated:

> "In setting a reasonable attorney fee for the prevailing party, it is appropriate for the court to take into consideration the actual billing practices of the party's attorney. Traditionally, courts simply have determined fees based on the hourly charge for the attorney working on the case with the assumption that the hourly rate was set to recoup overhead and realize a profit. Modern electric accounting methods allow a more specialized billing for attorney fees. Courts should recognize the reality of modern legal business practices and include expenses specially billed to the client in the attorney fees award when they are properly documented and are reasonable."

We therefore will partially allow plaintiffs' request for costs and expenses as part of their attorney fees award in the amount of $9,941. We deny plaintiffs' requested costs and expenses in the amount of $86,362, the extent to which they relate to class administration. As with the hours related to class administration, the class must seek a supplemental judgment in the trial court for those expenses.

## II. COMMON FUND AWARD

■ Plaintiffs also request an increase in the amount of the allocation to class counsel from the punitive damages

recovery under the equitable common fund doctrine. They assert that this common fund award would compensate class counsel for their efforts in defending on appeal the award on plaintiffs' fraud claim and the punitive damages recovery. Plaintiffs request that we enhance such a common fund award by a factor of 2.25, for the same reasons that support enhancement of their fee-shifting award.

Farmers objects to plaintiffs' request for a common fund award. Farmers argues that it should be denied because class counsel's effort on appeal did not preserve the punitive damages recovery in its entirety. Rather, the recovery was reduced on appeal by more than half.

Plaintiffs respond that they clearly "preserved" a common fund on appeal. They note that Farmers sought to eliminate the fund entirely or, in the alternative, to reduce the fund to an amount equal to the compensatory damages recovery. Instead, both challenges were rejected in *Strawn II* and a fund four times the amount of the compensatory damages was preserved.

Whether plaintiffs here are entitled to attorney fees *on appeal* under the equitable common fund doctrine where their class counsel partially preserved a fund after its creation at trial is a question of first impression. The common fund doctrine under Oregon law was discussed in *State Farm Mut. Auto. Ins. v. Clinton*, 267 Or 653, 657, 518 P2d 645 (1974), where the court recognized: "It is * * * a well-established rule in Oregon that an attorney whose efforts result in the recovery of a fund payable to various persons is entitled to payment of reasonable attorney fees from that fund." More recently, in *Strunk II*, the court concisely summarized the principles supporting the common fund doctrine. The court stated:

> "Under the common fund doctrine, plaintiffs whose legal efforts create, discover, increase, or preserve a fund of money to which others also have a claim, may recover the costs of litigation, including their attorney fees, from the created or preserved fund. As commentators have noted, the doctrine is primarily 'employed to realize the broadly defined purpose of recapturing unjust enrichment.' In other words, the doctrine is used to spread litigation expenses

among all beneficiaries of a preserved fund so that litigant-beneficiaries are not required to bear the entire financial burden of the litigation while inactive beneficiaries receive the benefits at no cost."

341 Or at 181 (citation omitted).

Although Oregon courts have not spoken on the issue of when a party is entitled to attorney fees on appeal under the common fund doctrine where the fund is created below and preserved on appeal, other courts have addressed the issue. The Washington Supreme Court in *Bowles v. Wash. Dept. of Ret. Systems*, 121 Wash 2d 52, 75, 847 P2d 440 (1993), declined to award such fees. In that case, a class action, the plaintiffs' attorneys requested attorney fees for their work on appeal under the common fund doctrine. The court stated:

"Under the percentage of recovery approach, the attorneys are to be compensated according to the size of the judgment recovered, not the actual hours expended. The plaintiffs have not increased the size of their recovery on appeal, thus we have no basis to increase their fees."

*Id.* Similarly, in *Okeson v. City of Seattle*, 130 Wash App 814, 828, 125 P3d 172 (2005), the plaintiff asked for attorney fees on appeal under the common fund doctrine. There too, the court denied the request and relied on the reasoning in *Bowles*. The court declined to award additional fees from the common fund because the trial court had awarded attorney fees on a "percentage of recovery" basis and the plaintiff had not increased the size of the recovery on appeal. *Id.* We find that reasoning helpful, and it informs our analysis below.

At this point, it is worth noting that, in the context of fee awards made under the common fund doctrine, concerns arise that (1) class counsel may be acting in conflict with the interests of the class in requesting an award from the recovered or preserved fund and (2) the parties may lack adversity where the prevailing party's award comes from a fixed fund and is not separately taxed on the opposing party. The Alaska Supreme Court most recently recognized these dual concerns in *State Dept. of Health v. Okuley*, 214 P3d 247 (Alaska 2009). There, the court stated:

"We have recognized the 'potential lack of adversity when class counsel asks the trial court to impose fees on the benefitted class members under the common fund doctrine.' Because of this potential lack of adversity, as well as the potential for conflicts of interest between the class and class counsel, we have explained that '[c]ourts should * * * closely scrutinize applications for attorney's fees from a fixed fund.' "

*Id.* at 252 (footnotes omitted). Because those same dual concerns are present here, we likewise closely scrutinize plaintiffs' request for additional fees from the punitive damages recovery.

We begin our scrutiny of plaintiffs' request by examining the award of attorney fees below. The initial opinion and order of the trial court regarding attorney fees indicates that the court initially awarded class counsel attorney fees for work done at trial on a percentage of recovery basis. Specifically, the court awarded class counsel 20 percent of the $8 million punitive damages recovery, amounting to $1.6 million, and 38 percent of the nonpunitive damages recovery, amounting to $1.575 million. The trial court, in explaining the total award of $3.175 million, also stated: "Viewed from another perspective, this award is essentially equivalent to the attorneys receiving the entire Fee-Shifting Award of $2,670,000 plus another $505,000 from the common fund for a total of $3,175,000."

Subsequently, the trial court entered an order regarding the reallocation of punitive damages. That subsequent order, in part, modified the initial opinion and order regarding attorney fees. First, the trial court vacated the last two pages of its initial opinion that had determined the specific percentages—20 percent and 38 percent—of the punitive damages and nonpunitive damages recoveries to be awarded as fees. Second, it ordered that class counsel was to receive the entire statutory fee award of $2,670,000. Third, it ordered that, from the $3,200,000 in punitive damages available to the prevailing party, class counsel was to receive $505,000 in addition to the statutory fee award.

Were we to construe the award of attorney fees made by the trial court as a fee award made on a percentage of

recovery basis, we would decline to award plaintiffs an additional award from the punitive damages recovery because plaintiffs have not increased their punitive damages recovery on appeal. However, given the procedural history of the trial court's attorney fee award, we conclude that the trial court's award was not based on a percentage of the recovered punitive damages. We conclude that plaintiffs are entitled to attorney fees for preserving a significant portion of the punitive damages common fund. The amount of fees incurred, 11 percent of the fees calculated earlier for the fee-shifting award, is $41,136. Given the reduction in the amount of allowed punitive damages as a result of the appeal, and the lack of complexity of the legal issues involved, we decline to enhance those fees under ORS 20.075(2)(a) and (d).

## III. INCENTIVE AWARD

■ Plaintiffs have also requested that an incentive award of $5,000 be made to the class representative, Strawn. Plaintiffs argue that an incentive award of this type is usually viewed as an extension of the common fund doctrine and has been described as a litigation expense. Plaintiffs propose that the award be made from the interest accrued on the compensatory damages portion of the underlying judgment. Plaintiffs argue that Strawn should receive such an incentive award because he (1) participated in numerous status conferences, meetings, and strategy sessions regarding the appeal over the four years the case has been pending on appeal; (2) attended the oral arguments on behalf of the class members; (3) was directly involved in making significant decisions affecting the interests of class members; and (4) remained exposed to substantial personal financial risk for Farmers' appellate costs and disbursements if the class had not prevailed on the appeal. Plaintiffs also contend that, although Strawn did not agree to serve as class representative for the purpose of receiving an incentive award, he is nonetheless entitled to such an award for his time, effort, and personal risk.

Farmers objects to plaintiffs' request for an incentive award on the ground that there is no authority in Oregon for providing Strawn with such an award. Further, Farmers argues that, even if there were a basis for such an award in

the abstract, plaintiffs have failed to present sufficient evidence, such as a record of the amount of time that Strawn spent on the appeal, to support allowing an award in this case. Farmers contends that inferences drawn from class counsel's billing records show that class counsel communicated with Strawn only briefly about the appeal process and that there is no evidence that his participation was at all necessary to the appeal.

Plaintiffs respond that an incentive award was allowed at trial and that Farmers did not challenge that award in *Strawn II*. Plaintiffs state that incentive awards have been made in numerous class actions and that the lack of Oregon case law authorizing such awards is explained by the fact that no other class actions have been fully litigated in Oregon state court. Lastly, plaintiffs contend that Farmers "speciously denigrates risk of a judgment against * * * Strawn personally for Farmers' appellate costs, as well as Farmers' trial costs, had the judgment been reversed."

It is correct that Oregon case law has not addressed the circumstances in which an incentive award may be granted to a class representative. And, the issue presented here—whether an incentive award may be granted to the class representative following an appeal in which the class prevails, as opposed to following a trial or settlement in which the class prevails—is specifically an unanswered question. For helpful guidance on those issues, we turn to how other courts have addressed incentive awards.

The Ninth Circuit, in *Rodriguez v. West Publishing Corp.*, 563 F3d 948, 958-59 (9th Cir 2009) (emphasis omitted), summed up the circumstances in support of granting an incentive award as follows:

> "Incentive awards are fairly typical in class action cases. *See* 4 William B. Rubenstein et al., *Newberg on Class Actions* § 11:38 (4th ed. 2008); Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 U.C.L.A. L. Rev. 1303 (2006) (finding twenty-eight percent of settled class actions between 1993 and 2002 included an incentive award to class representatives). Such awards are discretionary, *see In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir.

2000), and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general. Awards are generally sought after a settlement or verdict has been achieved."

In addition, the Seventh Circuit, in the matter of *Continental Illinois Securities Litigation*, 962 F2d 566, 571 (7th Cir 1992), addressed the rationale behind incentive awards by stating that, "[s]ince without a named plaintiff there can be no class action, such compensation as may be necessary to induce him to participate in the suit could be thought the equivalent of the lawyers' nonlegal but essential case-specific expenses, such as long-distance phone calls, which are reimbursable."

Bearing in mind that understanding of the purposes of incentive awards, we now decline to grant such an incentive award to class representative Strawn in this case. First, as noted by the Ninth Circuit in *Rodriguez*, incentive awards are generally sought—and thus awarded—after a settlement or verdict has been achieved in the class's favor. We therefore question the propriety of granting plaintiffs' request for an incentive award following an appellate judgment in the class's favor. Second, even if we were to assume that the common fund doctrine would authorize such an incentive award in the abstract following an appellate judgment, we agree with Farmers that plaintiffs have failed to present sufficient evidence to support their requested award in this case. Besides the bare assertions in the fee petition regarding Strawn's participation in the appeal, class counsel's billing records indicate that, at most, only 23.8 hours of their efforts may have involved consultation with Strawn and his attendance at oral argument. Furthermore, it is far from evident that any degree of participation by Strawn was necessary to the appeal, unlike the responsibilities of the class representative during the trial phase of the litigation. For those reasons, we decline to award Strawn the requested incentive award.

## IV. SUPPLEMENTAL FEES AWARD

Lastly, plaintiffs have submitted a supplemental petition for an additional award of $32,597.48, itemized as

$32,332.50 in fees and $264.98 in costs and expenses. Plaintiffs contend that they are entitled to fees for the time and effort that they have spent litigating their initial fee petition—so called "fees on fees"—and they cite *Crandon Capital Partners v. Shelk*, 219 Or App 16, 42-43, 181 P3d 773, *rev den*, 345 Or 158 (2008), and *Emerald PUD v. Pacificorp*, 104 Or App 504, 507, 801 P2d 141 (1990), *rev den*, 311 Or 222 (1991) as precedent for such an award. Plaintiffs argue that they have amassed a combined lodestar amount of $14,370 in fees as part of the fee application and litigation process, $2,590.50 of which represents additional class administration time. Plaintiffs have requested that we enhance their supplemental fees by a factor of 2.25.

Farmers objects to the supplemental petition and argues that plaintiffs are not entitled to a multiplier of 2.25 for the reasons expressed in its objections to the fee-shifting award. Lastly, Farmers suggests that, when ruling on the supplemental petition, we should consider "the overstatement and duplication of fees" in plaintiffs' initial petition.

As an initial matter, we note that the cases cited by plaintiffs in support of their supplemental petition themselves rely on ORCP 68 as the authority for "fees on fees." In those cases, we reasoned that the process of recovering fees was properly considered part of the "prosecution of an action" for purposes of a fee petition under ORCP 68. *Crandon Capital Partners*, 219 Or App at 42-43 (quoting *Johnson v. Jeppe*, 77 Or App 685, 688, 713 P2d 1090 (1986)); *Emerald PUD*, 104 Or App at 507 (also quoting *Johnson*). Thus, the precedent cited by plaintiffs, which addresses "fees on fees" at the trial level, is not directly applicable in determining their supplemental fee request on appeal. Authority for such fees must be found elsewhere.

Here, plaintiffs' supplemental fee request is based on ORS 742.061(1), which provides that "a reasonable amount * * * as attorney fees shall be taxed as part of the costs of the action and any appeal thereon." The question we are therefore presented with is whether the process of recovering fees for appellate work may properly be considered part of the "appeal" for purpose of a fee petition authorized by ORS 742.061(1). We now hold that such "fees on fees" are

available because the process of litigating the fee petition for appellate work is properly considered part of the appeal.

We therefore allow plaintiffs' supplemental petition for fees in part, in the amount of $11,777. We deny the request for fees attributable to class administration time; plaintiffs must instead seek a supplemental judgment in the trial court for that time. We also decline to enhance plaintiffs' fees for the relatively routine work of litigating a fee petition. Lastly, we allow plaintiffs' supplemental request for costs and expenses not included in their hourly rates in the amount of $265.

Petitions for attorney fees allowed in amount of $595,647.