106 July 29, 2015 No. 14

IN THE OREGON TAX COURT
REGULAR DIVISION

Joseph W. ANGEL,
*Plaintiff,*
*v.*

DEPARTMENT OF REVENUE
and Multnomah County Assessor,
*Defendants.*

(TC 5126)

Following the entry of judgment in this matter, Plaintiff (taxpayer) submitted a statement for attorney fees, costs, and disbursements. Defendants Department of Revenue (the department) and Multnomah County Assessor (the assessor) filed responses disputing the award of attorney fees, arguing that no fees attributable to the proceedings in the Magistrate Division should be awarded, as the assessor had prevailed in that proceeding. The assessor further objected to fees incurred in related proceedings instituted to preserve the position of taxpayer in later years while the year in question in this case was being litigated. The assessor further objected that adequate detail was not provided for expert witness costs, and that fees incurred to prosecute the petition for an award of fees should not be recoverable. The court found that the positions of the assessor during the underlying litigation had no reasonable basis in law or fact and that an award of fees was proper as to the factor of the assessor's positions and the factor of deterrence. The court further reiterated that under ORS 305.490(4)(a) and (b) the department is responsible for payment of any fees awarded in a matter before the court. The court further ruled that ORS 305.490(4) does not permit expansion of the right to fees in related proceedings as claimed by taxpayer.

Hearing on attorney fees was held March 2, 2015, in the Multnomah County Courthouse, Portland.

Erick J. Haynie, Perkins Coie LLP, Portland, filed the statement for attorney fees and argued the cause for Plaintiff (taxpayer).

Daniel Paul, Assistant Attorney General, Department of Justice, Salem, filed a response to taxpayer's statement for Defendant Department of Revenue (the department).

Lindsay R. Kandra, Multnomah County Counsel, Portland, filed a response and argued the cause for Defendant Multnomah County Assessor (the assessor).

Decision for Plaintiff rendered July 29, 2015.

**HENRY C. BREITHAUPT, Judge.**

This matter is before the court on the application of Plaintiff (taxpayer) for an award of attorney fees. Taxpayer was the prevailing party in this case. Defendants were the Department of Revenue (the department) and the Multnomah County Assessor (the assessor).

Under ORS 305.490(4)(a) and (b) the department has the responsibility to pay any fees awarded in this matter.[1] Although the department argues that should not be the case, the court will not depart from its decision in *McKee v. Dept. of Rev.*, 18 OTR 58, 64-65 (2004). That said, the department did not participate in this matter other than to appear at the Tax Court Rule (TCR) 68 hearing and in related briefing. The following is an analysis of how the factors set forth in ORS 20.075 apply in this case.

A.  *Reasonableness of the Position of Assessor*

The court finds that the position of the county assessor had no basis in law or fact.

As to a legal basis, the relevant statute is ORS 321.257(2) which states that land qualifying for the tax treatment afforded to a taxpayer prior to disqualification by the county assessor is land held for the predominant purpose of forestry. Taxpayer does not dispute that standard.

The basis for the disqualification actions of the county assessor was his interpretation of provisions of the zoning laws of the City of Portland. Both the trial in this matter and the hearing on attorney fees demonstrates that the interpretation of the assessor was wrong.

There is simply no question that the conclusion of the assessor that Portland zoning rules prevented forestry activities and harvests was wrong. As to one zoning rule upon which the assessor relied, the assessor has acknowledged that the zoning rule did not apply to this property. As to the other zoning rule upon which the assessor relied for his disqualification decision, an analysis by the City of Portland concluded that forestry activity and harvest could continue in the zone in question. This information was either available to the assessor before the notice of disqualification

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to 2013.

was issued or shortly after the notice of disqualification was issued. Yet the assessor persisted with the defense of the disqualification decision.

Whether a party persists with or re-evaluates a challenged position in a case is an important consideration. The reasonableness of the position of a party is to be examined at all steps in a case. *See Dimeo v. Gesik*, 164 Or App 567, 572, 993 P2d 183 (1999).

The persistence of the assessor in his mistaken understanding of relevant law occurred notwithstanding the offer by one taxpayer affected by the numerous disqualification decisions to meet and discuss the problems with the assessor's position.

The continued defense by the assessor of his disqualification decision was based on two positions. The first of these was that, while the zoning rule that did apply to the property did allow forestry activity and harvest, compliance with that rule would be so burdensome as to be a *de facto* prohibition. Under the governing law as to the award of attorney fees, *Mattiza v. Foster*, 311 Or 1, 8, 803 P2d 723 (1990), that position must have a reasonable basis both in fact and law.

Even if the position of the assessor as to the proper interpretation of the zoning ordinance is considered correct (a position the court does not accept) the assessor presented absolutely no evidence to support his conclusion regarding *de facto* prohibition due to burdens of compliance. Nor did the assessor in any way effectively challenge the showing made by taxpayer that the factual premise of the assessor's argument relating to burdens of harvest was false.

The second factual position of the assessor was based on the intent or purposes of taxpayer and was based upon two past actions of taxpayer. The assessor asserted that these actions were relevant to the assessor's disqualification decision made in a later year. Several fundamental problems exist for that argument.

First, as the assessor surely knows, exemption or special assessment questions, like most other issues in the property tax process, must be resolved on a year-by-year

basis and not otherwise. *See, e.g.*, *Mittelman v. Commission*, 2 OTR 105, 106-07 (1965); *PP&L v. Dept. of Rev.*, 10 OTR 417, 419-20, (1987); *cf. Fisher Broadcasting, Inc. v. Dept. of Rev.*, 13 OTR 32, 34 (1994), *rev'd on other grounds*, 321 Or 341 (1995) (and cases cited therein). That is obvious from the provisions of ORS chapter 321 that repeatedly state an annual frame of reference and thus contemplate that purposes can change from year to year. *See* ORS 321.348; ORS 321.349; ORS 321.358; ORS 321.366. Actions, in this case many years before the year in question, are simply no support for a later decision, at least where, as here, no continuous factual stream is shown to connect the earlier actions of an earlier year to the year of the assessor's actions.

Second, the actions to which the assessor pointed— a Measure 37 claim and one discussion with planning officials—were limited in scope and abandoned by taxpayer well before the year in question.

The court finds that the position of the assessor as to prior acts of taxpayer had no basis in fact. The court also finds that these arguments were simply attempts to prevail in the defense of a disqualification decision which the assessor had learned was without legal foundation. However, an attempt to prevail in a factual position must include the facts necessary to establish the factual predicate for that position—here the cost of compliance with the one zoning rule that did apply to the property. The assessor did not even attempt to establish that factual predicate.

In its opinion on the merits in this case, the court noted that the evidence as to taxpayer intent was somewhat sparse. *Angel v. Dept. of Rev.*, 21 OTR 444, 449 (2014). The department and the assessor point to that observation as if it makes the assessor's position reasonable. However, the facts in the record indicate that a timberland owner with unquestioned intent to harvest might not, in fact, do much as the trees continue to grow naturally over time. Secondly, sparse facts trump no facts.

As stated above, the reasonableness of a position must be considered at all steps in a case. The court has found that the assessor knew or should have known of the invalidity of his basic legal theory in this case—at least the

invalidity of the theory absent factual showings to support the "prohibitively costly harvest" theory or the "prior bad acts" argument. The assessor never developed or presented any evidence on the "prohibitively costly harvest" theory and must have known that he would not do so prior to the trial in this matter.

The assessor must have known throughout the proceedings that special assessment qualification is a year-by-year determination. He further knew, at the very time that he developed the "prior bad acts" theory, that the "prior bad acts" upon which he relied, if they were "bad acts," had occurred many years before the year of disqualification.

The department has argued that ORS 321.359 uses a mandatory phrase in describing what an assessor is to do when he discovers that property ceases to be qualified for special assessment. That language does not, however, insulate an assessor from challenge as to the correctness of a mistaken conclusion as to what the law requires or permits. Rather, the mandatory language insures that assessors will not be permitted to exercise discretion when, in fact and in law, a property ceases to qualify for special assessment.

The court concludes by noting that the assessor's position contains an internal contradiction that reveals how illogical it was. On the one hand, the assessor argues that taxpayer could not harvest the timber. From that premise the assessor then concludes that the land should be taxed as if taxpayer could harvest the timber and develop the then much more valuable property. The legislative enactments in Oregon do not contemplate such a world.

B.   *Deterrence*

The court is to consider whether an award of fees would deter others from either asserting meritless claims or defenses. ORS 20.075(1)(d). The court is also to consider the extent to which a failure to award fees could deter others from asserting good faith claims or defenses. ORS 20.075(1)(c).

As to this factor, the court has no doubt as to the balance. The evidence in the record, both at trial and especially at the TCR 68 hearing indicates to the court that the

assessor first issued disqualification notices solely on the basis of his misunderstanding as to the effect of zoning laws and without due diligence as to the operation of the city zoning rules. That was the sole basis stated in the notices received by this taxpayer and many others located along Skyline Boulevard.

Having discovered the problems with his position regarding zoning, the assessor then engaged in a crusade to vindicate his mistaken position without any apparent effort to either match his "prior bad acts" theory with the annual features of the property tax system or to develop facts to support his "prohibitively costly harvest" theory.

Such persistence by an assessor, when consultation with the city or with state forestry professionals, might well have led to correction of errors, will deter appropriate challenges to incorrect actions unless successful challenges to such positions are accompanied by attorney fee awards. If the court does not award fees in this matter, this assessor and other assessors could well conclude that it is appropriate to disqualify first and then attempt to defend that conclusion without either re-evaluation. Such re-evaluation is especially important as to flawed legal premises and the absence of facts supporting the application of any legal theory.

In reaching this conclusion, the court also takes into account evidence from the TCR 68 proceeding in *Rosalie Ridge LLC II v. Dept. of Rev.*, 22 OTR 115 (2015). That evidence, relating to the coordinated actions of the assessor with respect to many taxpayers, indicates the assessor was uninterested in discussions with taxpayers that might have revealed the errors in his analysis of zoning and forestry costs.

The court also considers that the assessor's litigation position was aggressive. The assessor moved for summary judgment and forced taxpayer to incur costs in defending against that motion. This occurred at a time when the assessor must have known that a pure legal defense of his position was not available. Both his "prohibitively costly harvest" position and his "prior bad acts" position involved questions of fact. Whether costs are prohibitive is a classical

factual dispute. Intent or purpose of a taxpayer and what, if anything, "prior bad acts" show about intent or purpose are also classic fact questions. The motion for summary judgment in this matter was summarily denied by this court.[2]

Finally, at the TCR 68 hearing on this matter, counsel for the assessor argued that she knew that taxpayer never intended to harvest the trees and that his participation in the special assessment program was illegitimate—notwithstanding that his participation in this program was of long standing and had been confirmed by the assessor. Counsel argued that it was not "fair" for taxpayer to receive the benefits of the special assessment program.

The court is quite concerned that such views either originate with or were shared by the assessor. In any case, they were the views expressed by his legal representative. They are, of course, wrong. It is not for the assessor to determine what is "fair." The legislature has made that determination. When property meets the qualifications set by statute, assessors are not permitted to engage in wholesale disqualifications based on their concepts of fairness or misunderstandings of relevant zoning law—and then defend such actions in expensive litigation with no facts to support his position—at least without having to pay the cost to a taxpayer who defends. Crusades can be costly.

As stated above, the court does not depart from its decision in *McKee* that the department ultimately has the responsibility to make the payments ordered in this decision. The court does not view that as inappropriate. The department has supervisory jurisdiction over the property tax system. It can intervene at any stage in a property tax

---

[2] Similar problems with a motion for summary judgment existed in the Magistrate Division. Unfortunately, the magistrate ruling on the matter overlooked the obvious fact questions and granted summary judgment. Although the department and assessor seek to avoid a fee award or reduce it based on this action by a magistrate, the court does not accept their arguments. The statute involved allows for fees in the Magistrate Division proceedings without a limitation that the applicant must have been successful in that stage of the proceedings. Our Supreme Court has concluded that a victory in the Magistrate Division for a taxpayer cannot be taken into account in considering a fee award in this division following a victory here. *Clackamas Cty. Assessor v. Village at Main Street*, 352 Or 144, 154-56, 282 P3d 814 (2012). That being the case, a loss in the Magistrate Division cannot fairly be, on its own, a factor for consideration.

case. It can educate assessors. It can require assessors to consult with it before undertaking wholesale disqualifications from special assessment programs. If it does not do these things it cannot be heard to complain that it should not bear a burden. If it does do some or all of these things but is in error itself, it is not inappropriate to visit a fee award upon it.

## C.   *Amount of Award*

The assessor has objected to certain items claimed by taxpayer.

First, the assessor objects that no fees attributable to the proceedings in the Magistrate Division should be awarded, as the assessor prevailed in that proceeding. As stated above (*see* 22 OTR at 112 n 2), that victory cannot, under the decision in *Clackamas Cty. Assessor v. Village at Main Street*, 352 Or 144, 154-56, 282 P3d 814 (2012), result in a basis for an award or denial of an award of fees to a litigant in the Regular Division. The fee award includes those fees and costs.

Second, the assessor objects to fees incurred in related proceedings instituted to preserve the position of taxpayer in later years while the year in question in this case was being litigated. The court is of the opinion that ORS 305.490(4) does not permit expansion of the right to fees to such related proceedings.

Taxpayer has calculated that this conclusion of the court would lead to a deduction of $12,384.47. Such a reduction must be made.

Third, the assessor objects to the amount of filing fees claimed by taxpayer. Taxpayer is entitled only to the filing fees for the Magistrate Division and Regular Division filings in this case. The award is limited to $480.00.

Fourth, the assessor objected that adequate detail was not provided regarding expert witness costs. Taxpayer subsequently provided detail and no response was made by the assessor. Those costs are allowed, especially considering the necessity of the assistance of experts given the theories advanced by the assessor.

Finally, the assessor objects to any award of fees incurred to prosecute the petition for an award of fees. Such fees are generally recoverable. *Strawn v. Farmers Ins. Co.*, 233 Or App 401, 424-26, 226 P3d 86 (2010). The court is of the opinion that an application for fees is part of the "proceeding" referred to in ORS 305.490(4).

Taxpayer has withdrawn so-called disputed (e) items and any request for a prevailing party fee. Those items are not allowed.

D.   *Conclusion*

Except for the fees and costs denied immediately above, the application for fees and costs made by taxpayer is allowed. Counsel are directed to confer regarding the dollar amount of the award given the rulings above and counsel for taxpayer is directed to submit a form of supplemental judgment. Now, therefore,

IT IS ORDERED that Plaintiff's application for attorney fees is granted as described above.